UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARTFORD UNDERWRITERS
  INSURANCE COMPANY
TWIN CITY FIRE INSURANCE COMPANY
HARTFORD FIRE INSURANCE COMPANY
PROPERTY AND CASUALTY INSURANCE
  COMPANY OF HARTFORD
TRUMBULL INSURANCE COMPANY
HARTFORD CASUALTY INSURANCE
  COMPANY

     Plaintiffs

-vs-

DAVID OTTO

     Defendant

Case No.

Judge

Magistrate Judge

WILSON ELSER MOSKOWITZ
  EDELMAN & DICKER, LLP
William S. Cook (P68934)
500 Griswold Street, Suite 2300
Detroit, Michigan  48226
313-327-3100
william.cook@wilsonelser.com
*Attorneys for plaintiffs*

## COMPLAINT

Plaintiffs Hartford Underwriters Insurance Company, Twin City Fire

Insurance Company, Hartford Fire Insurance Company, Property and Casualty

Insurance Company of Hartford, Trumbull Insurance Company, and Hartford

255938322v.1

Casualty Insurance Company, by and through their undersigned attorneys, as and for their Complaint against Defendant David Otto allege as follows:

<u>Nature of Action</u>

1.      This is an action for a declaratory judgment. Plaintiffs seek a declaratory judgment that the Court in *Hartford Underwriters Insurance Company, et al. v. Omega Resources Solutions, LLC*, Case No. 2:28-cv-12907 in the U.S. District Court for the Eastern District of Michigan – Southern Division ("*Hartford Underwriters I*"), may pierce the corporate veil of Omega Resources Solutions, LLC and hold Defendant David Otto individually liable for the judgment of $1,409,814.00 entered in favor of Plaintiffs and against Omega in that action, plus accrued post-judgment interest. (*Hartford Underwriters I*, ECF No. 14)

<u>Parties</u>

2.      Plaintiffs Hartford Underwriters Insurance Company, Hartford Fire Insurance Company, and Trumbull Insurance Company are Connecticut corporations which maintain their principal place of business at One Hartford Plaza, Hartford, CT 06155.

3.      Plaintiffs Hartford Casualty Insurance Company, Twin City Fire Insurance Company and Property and Casualty Insurance Company of Hartford are Indiana corporations which maintain their principal place of business at One Hartford Plaza, Hartford, CT 06155.

4.      All Plaintiffs (collectively referred to hereinafter as "Plaintiffs") are member companies of The Hartford Financial Services Group, Inc. and are engaged in the business of insurance.

5.      Defendant David Otto ("Otto") is a citizen of the State of Michigan. Otto is the sole owner and sole member of Omega Resources Solutions, LLC ("Omega"), a Michigan limited liability company which maintains its principal place of business at 13900 Lakeside Circle, Suite 200, Sterling Heights, MI 48313.

Jurisdiction and Venue

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because it involves citizens of different states and an amount in controversy exceeding the sum of $75,000.00, exclusive of interest and costs.

7.      Venue in the Eastern District of Michigan is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) in that it is the district where defendant Otto resides and where a substantial part of the events giving rise to this action occurred.

8.      This action seeks declaratory relief pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57.

Background Facts

**A.      The insurance contract and unpaid premiums.**

9.      At all relevant times herein, Omega was in the business of providing merchandising and product demonstration services for its clients at various third-

3

party stores and retail locations nationwide. Omega supplied all of the employees and labor for these services and passed on certain of these employee costs to its clients, including the cost of premiums for workers compensation insurance for the employees it supplied.

10.     At the request of Omega, Plaintiffs issued Workers Compensation Insurance Policy No. 42 WE CP3934 which provided Omega with workers' compensation insurance coverage for its employees on a nationwide basis for the period of January 1, 2015 to January 1, 2016, and January 1, 2016 to January 1, 2017 (the "Policy").

11.     Pursuant to the Policy, Omega agreed to pay certain premiums to Plaintiffs which were subject to annual audits. The audit results for the 2015-16 and 2016-17 Policy periods ("the Audits") showed that Omega owed Plaintiffs additional premiums for the insurance coverage provided by the Policy in the amount of $1,374,967.00 (the "Additional Premiums").

15.     There were several reasons for the assessment of the Additional Premiums, including, without limitation: (i) a significant increase in Omega's payroll during the 2015-16 Policy period from an estimated $9,089,800 to an actual $23,579,682; (ii) Omega's submission of improper employee code designations at the inception of the Policy; and (iii) Omega's failure to segregate its payroll by employee classification codes; and (iv) the failure of Omega to

4

completely cooperate with the audits by refusing to provide Plaintiffs with reasonably requested information and documents pertaining to the actual activities undertaken by Omega's employees at various job sites during the 2015-16 and 2016-17 Policy periods.

16.     In this regard, Plaintiffs also note that between 2014 and 2017, Omega incurred $1,306,083 in workers compensation claims which were not consistent with the simple "retail" employee code classification estimated by Omega at the inception of the Policy. Further, Omega appears to be the successor to a prior insured of Plaintiffs named Cyber Group, Inc. whose workers compensation coverage was not renewed due to excessive claims activity.

17.     On or about October 2, 2017, Plaintiffs sent Omega a Final Insurance Bill setting forth the Additional Premiums owed under the Policy and demanding payment as required by the Policy.

18.     On December 1, 2017, Omega filed an administrative appeal with the Michigan Department of Insurance and Financial Services seeking a review of Plaintiffs' assessment of the Additional Premiums after the completion of the Audits under the Policy.

19.     Plaintiffs timely responded to the administrative appeal and disputed the claims asserted by Omega. On July 27, 2018, Administrative Law Judge Christopher S. Saunders entered an order dismissing Omega's administrative

255938322v.1

appeal with prejudice due to Omega's failure to prosecute the appeal and to
otherwise comply with its discovery obligations.

**B.    Plaintiffs secure a judgment against Omega in this Court.**

20.    On September 17, 2018, Plaintiffs filed their complaint in *Hartford
Underwriters I*.  Plaintiffs alleged that Omega had breached the insurance contract
in failing to pay the Additional Premiums and sought damages in an amount in the
amount of $1,374,967.00 plus pre- and post-judgment interest and costs. (*Hartford
Underwriters I*, ECF No. 1)

21.    Through counsel, Omega filed an answer in *Hartford Underwriters I*.

22.    On November 16, 2018, Omega's counsel in *Hartford Underwriters I*
filed a motion to withdraw. The motion stated that Omega had gone out of business
and was unable to pay counsel. The motion stated further that Omega agreed that it
would have 30 days to retain new counsel and, if counsel was not retained within
that time frame, Plaintiffs could file a motion for default judgment. (*Hartford
Underwriters I*, ECF No. 6)

23.    On December 12, 2018 the Court in *Hartford Underwriters I* issued a
text only order granting the motion to withdraw and ordering Omega to obtain
counsel and to file an appearance within 30 days. Omega did not comply with this
order.

6

24.     On February 1, 2019, Plaintiffs filed a motion for default judgment in *Hartford Underwriters I*. (*Hartford Underwriters I*, ECF No. 7)

25.     On May 20, 2019, the Court struck Omega's answer in *Hartford Underwriters I*, granted Plaintiffs' motion for default judgment, and entered a judgment for Plaintiffs and against Omega in the total amount of $1,409,814.00. (*Hartford Underwriters I*, ECF Nos. 13, 14) A true and correct copy of the judgment entered against Omega is annexed hereto as **Exhibit A** (the "Judgment").

**C.     Plaintiffs' efforts to collect the judgment.**

26.     On or about July 19, 2019, Plaintiffs served and filed a Request and Writ for Garnishment (Non-Periodic) seeking payment of the judgment in *Hartford Underwriters I*. (*Hartford Underwriters I*, EC No. 18) Plaintiffs named Omega as the judgment debtor and Fifth Third Bank as the garnishee. Fifth Third Bank filed and served its garnishee disclosures on or about August 12, 2019 and August 15, 2019 stating that Omega had no open accounts with it. (*Hartford Underwriters I*, ECF Nos. 19, 20)

27.     On or about December 17, 2019 and January 9, 2020, Plaintiffs served and filed a Request and Writ for Garnishment (Non-Periodic) seeking payment of the judgment in *Hartford Underwriters I*. (*Hartford Underwriters I*, ECF Nos. 22, 25) Plaintiffs named Omega as the judgment debtor and Citizens Bank as the garnishee. Citizens Bank filed and served its garnishee disclosures on or about

7

January 13, 2020 and February 6, 2020, stating that Omega had closed its account there on April 15, 2018 and had no open accounts there. (*Hartford Underwriters I*, ECF Nos. 24, 26)

### D.   Post-judgment discovery.

28.     In addition to the foregoing writs for garnishment, Plaintiffs conducted post judgment discovery in an effort to determine if it could collect the judgment from Otto personally.

29.     Michael Zybura ("Zybura") is the director of finance for America's Back Office, another of Otto's entities. A true and correct copy of his deposition transcript is annexed hereto as **Exhibit B**. Zybura testified in pertinent part as follows:

a.      Zybura is responsible for accounting, finance, taxes, and compliance for all of Otto's entities (of which the State of Michigan lists 123 entities) for which Otto acts as sole owner, manager, member and/or shareholder, including Omega. **(Exhibit B, pp. 5-6)**

b.      Zybura is paid by his official employer, AES Human Capital Resources Inc., a company also solely owned by Otto, and does work for all of Otto's corporate forms, which he believed numbered about sixteen currently active entities. At Otto's direction, Zybura transferred funds from Omega to these sixteen

8

entities after the judgment was entered in *Hartford Underwriters I* in order to avoid payment of the judgment. **(Exhibit B, pp. 8-9)**

      c.    At Otto's direction, Zybura transferred funds designated as "workers' compensation premium profits" to another entity wholly owned and controlled by him (Otto) named America's Back Office Midwest, which also began to conduct the same business as Omega with the same customers of Omega. **(Exhibit B, pp. 62-63)**

      d.    There were no written contracts or agreements between Omega and Otto's other companies who received the benefit of Omega's cash and clients, nor any consideration paid for such transfers. **(Exhibit B, pp. 22-23)**

      e.    At Otto's direction, funds were withdrawn from Omega's accounts at irregular intervals and not in accord with Omega's operating agreement, bylaws, or consistent with any invoice or other payment arrangement or plan. **(Exhibit B, pp. 64-65)**

      f.    Otto paid himself in excess of $2.6 million for managing Omega's payroll functions through his various entities, while at the same time he caused Omega to fail to pay its significant workers' compensation premiums to Plaintiffs for payroll of more than $24 million. **(Exhibit B, pp. 29-30)**

      g.    Omega collected $1,662,251.00 in workers' compensation insurance payments from its customers, but failed to pass on such payments to

9

Plaintiffs for the insurance coverage they provided. Rather, Omega booked these payments as profits and eventually transferred all that cash to Otto or other entities he controlled. In addition, Omega and Otto charged these customers $2.6 million in management fees and $443,539 in "administrative" fees. **(Exhibit B, pp. 48-49, 62, 75-78)**

30.     Anthony Sabatella is employed by Otto's company America's Back Office as its risk manager; he is also Otto's son and was hired by Otto in 2012 when he (Sabatella) graduated from college. A true and correct copy of Sabatella's deposition transcript is annexed hereto as **Exhibit C**. Sabatella testified in pertinent part as follows:

a.     At Otto's direction, Sabatella purchased the sole membership interest of Omega from its then-owner, Craig Sherman, in 2014. Sabatella thus became the sole "owner" and "CEO" of Omega, even though he admitted that his involvement with Omega was purely on paper with his purchase of Craig Sherman's membership interest, which he later transferred to his father, Otto. Sabatella admitted that while he was the sole member of Omega he did not execute any contracts for Omega, did not write checks for Omega, did not hire employees for Omega, did not direct how any monies were spent, did not divide up any of the profits or losses for the business, and did not direct anyone to do anything on

behalf of Omega. All of these decisions were made by Otto. **(Exhibit C, pp. 26-27, 43-44, 49)**

b.      At Otto's direction, Sabatella signed the purchase agreement for Omega because Otto could not sign the agreement himself due to an insurance regulation issue. Sabatella was not compensated for the purchase of Omega. (**Exhibit C, p. 38**)

c.      Sabatella was not compensated in any form (i.e., bonuses, distributions, wages, salary, etc.) for being the sole member of Omega; only Otto was compensated by Omega and Sabatella did as he was told by Otto. **(Exhibit C, pp. 38-39**).

d.      At Otto's direction, Sabatella later transferred all membership interest in Omega to Otto. Sabatella was not compensated by Otto for this transfer. Notably, this transfer occurred during the Additional Premiums Audit conducted by Plaintiffs which resulted in the judgment for Plaintiffs in *Hartford Underwriters I*. (**Exhibit C, pp. 38-39**).

**D.      Plaintiffs' motion for post-judgment discovery.**

31.      On October 29, 2020, Plaintiffs filed a post-judgment motion in *Hartford Underwriters I* pursuant to Federal Rule of Civil Procedure 69 presenting the foregoing evidence and seeking the following relief: (1) a finding that David Otto used Omega as his own personal instrumentality and thus the corporate veil of

11

Omega is pierced such that the judgment against Omega is to be entered and recorded against Otto personally; (2) allowing post-judgment discovery against Otto personally and any business in which he may have an interest, membership, or any form of ownership, together with all personal assets; and (3) allowing the judgment to be executed against Otto personally and any of his assets. (*Hartford Underwriters I*, ECF No. 27)

32.     Otto retained counsel (*Hartford Underwriters I*, ECF Nos. 29, 30, 38, 39), and Plaintiffs' motion was fully briefed by both sides. (*Hartford Underwriters I*, ECF Nos. 32, 36, 41, 42)

33.     On May 21, 2021, Magistrate Judge Kimberly Altman issued her Report and Recommendation. (*Hartford Underwriters I*, ECF No. 43) Magistrate Judge Altman recommended that Plaintiffs' motion be denied on the ground that, under Michigan law, Plaintiffs cannot pierce Omega's corporate veil in order to hold Otto personally liable for the judgment entered against Omega in *Hartford Underwriters I* by motion because Otto was not a party to *Hartford Underwriters I*. (*Hartford Underwriters I*, ECF No. 43, PageID.604-PageID.611) Instead, Plaintiffs must bring a separate action him or move to join him as a party in *Hartford Underwriters I*:

> *Green [v.Ziegelman*, 767 N.W.2d 660 (Mich. Ct. App. 2009]*, thus, directly addresses whether a court can pierce the corporate veil to hold a sole shareholder who was not a party to the original proceeding, like Otto, liable through a post-

12

judgment motion. *Green* says the answer is no. Accordingly, under Michigan law, Plaintiffs cannot pierce the corporate veil to hold Otto personally liable without first bringing a claim against him or joining him to the current action. (*Hartford Underwriters I*, ECF No. 43, PageID.611)

34.     Magistrate Judge Altman then considered the merits of Plaintiffs'

argument that the corporate veil should be pierced "for the purpose of

completeness." (*Hartford Underwriters I*, ECF No. 43, PageID.612) In this regard,

Magistrate Judge Altman observed that Plaintiffs "appear to have established" that

Omega's corporate veil should be pierced for purposes of holding Otto personally

liable for the judgment against Omega in *Hartford Underwriters I*:

> Michigan courts will not pierce the corporate veil unless (1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss. Regarding the second element, Michigan courts have held that a breach of contract can be the kind of wrong that justified piercing a corporate veil if the corporate form has been abused.
>
> First, Plaintiffs appear to have established that [Omega] was a mere instrumentality of Otto. [Omega] collected $1,662,251 from its clients for workers compensation premiums, but the majority of that money was sent to a management company owned by Otto, rather than to the workers compensation carriers, here Plaintiffs. Second, [Omega] breached the contract it had with plaintiffs for workers compensation insurance. The result of that breach of contract was the default judgment awarding damages in the amount of $1,409,814. Third, Plaintiffs have suffered a loss of $1,409,814. If Plaintiffs are unable to hold Otto personally liable for that sum, Plaintiffs would be unable to recoup the money they lost because it seems that Otto has removed all assets from

13

[Omega]. By directing Zybura to send the money collected from clients for workers compensation premiums to a management company owned by Otto, rather than remit those premiums to Plaintiffs, Otto exercised [his] control over [Omega] in a way that wronged Plaintiffs. Under these circumstances, Michigan law would appear to allow Plaintiffs to pierce [Omega's] corporate veil and seek damages from Otto.

However, as explained above, in order to obtain the relief they seek, Plaintiffs must either file a new action against Otto or file a motion seeking to join him in this action.

(*Hartford Underwriters I*, ECF No. 43, PageID.613-PageID.614)

35.     On June 9, 2021, the District Court in *Hartford Underwriters I* entered an order accepting and adopting Magistrate Judge Altman's Report and Recommendation. (*Hartford Underwriters I*, ECF No. 44)

## AS AND FOR A FIRST CAUSE OF ACTION
### (<u>Declaratory Judgment</u>)

36.     Plaintiffs hereby re-allege and incorporate by reference each of the allegations set forth above in paragraphs 1 through 35 as if fully set forth herein.

37.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), *et seq.*, empowers a United States District Court "[i]n a case of actual controversy within its jurisdiction" and "upon the filing of an appropriate pleading" to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Federal Rule of Civil

14

Procedure 57 provides that "the existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate" and that "the court may order a speedy hearing of a declaratory judgment action."

38.     Plaintiffs herein seek a declaratory judgment that the Court may pierce Omega's corporate veil and hold Otto individually liable for the judgment entered against Omega in *Hartford Underwriters I*. A declaratory judgment action is an appropriate action for seeking to pierce the corporate veil in order to hold a corporation's sole shareholder individually liable for a judgment entered against the corporation. *See, e.g., LePine v. Rosenbaum*, 2020 U.S. Dist. LEXIS 94779 (E.D. Mich. June 1, 2020), *33-*40.

39.     Under Michigan law, a corporate veil may be pierced where the evidence shows that the corporate entity was a mere instrumentality of another entity or individual; the corporate entity was used to commit a fraud or wrong, including a breach of contract; and the plaintiff suffered an unjust loss. *See, e.g., LePine*, 2020 U.S. Dist. LEXIS 94779, *34 (collecting cases).

40.     Here, as Magistrate Judge Altman observed in *Hartford Underwriters I*, the evidence as alleged in this Complaint shows that Omega was a mere instrumentality of Otto; that, at Otto's direction, Omega breached its contract with Plaintiffs for workers compensation insurance; and that Plaintiffs have been damaged in the amount of $1,409,814.00. Omega's corporate veil should

255938322v.1

accordingly be pierced and Otto should be held individually liable for the judgment in favor of Plaintiffs and against Omega in *Hartford Underwriters I*.

## <u>REMEDY REQUESTED</u>

**WHEREFORE**, for the reasons stated above, Plaintiffs Hartford Underwriters Insurance Company, Twin City Fire Insurance Company, Hartford Fire Insurance Company, Property and Casualty Insurance Company of Hartford, Trumbull Insurance Company, and Hartford Casualty Insurance Company respectfully request that this Court enter a declaratory judgment in favor of them and against Defendant David Otto as follows:

1. Declare, pursuant to 28 U.S.C. § 2201, *et seq*., and Federal Rule of Civil Procedure 57, that the corporate veil of Omega Resources Solutions, LLC is pierced as between it and Plaintiffs in *Hartford Underwriters I*.

2. Declare, pursuant to 28 U.S.C. § 2201, *et seq.*, and Federal Rule of Civil Procedure 57, that Defendant David Otto is individually liable for the Judgment entered against Omega Resources Solutions, LLC and in favor of Plaintiffs in *Hartford Underwriters I* the same as if Otto were an individually named defendant and judgment debtor therein.

3. Award Plaintiffs their reasonable attorney fees and costs in bringing this action with interest thereon.

255938322v.1

4.      Award Plaintiffs any further relief that this Honorable Court deems appropriate in law or equity.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  July 7, 2021                    Respectfully submitted,

                                        WILSON ELSER MOSKOWITZ
                                          EDELMAN & DICKER, LLP

                                        By:  _/s/ William S. Cook_
                                        William S. Cook (P68934)
                                        500 Griswold Street, Suite 2300
                                        Detroit, Michigan  48226
                                        Tel:  313-327-3100
                                        Email:  william.cook@wilsonelser.com

                                        -and-

                                        Mark G. Ledwin
                                        WILSON ELSER MOSKOWITZ
                                          EDELMAN & DICKER, LLP
                                        1133 Westchester Avenue
                                        White Plains, NY 10604
                                        Tel:  914-872-7148
                                        Email:  mark.ledwin@wilsonelser.com
                                        Attorneys for Plaintiffs

255938322v.1