# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

HARTFORD UNDERWRITERS INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, HARTFORD FIRE INSURANCE COMPANY, PROPERTY AND CASUALTY INSURANCE COMPANY OF HARTFORD, TRUMBULL INSURANCE COMPANY, and HARTFORD CASUALTY INSURANCE COMPANY,

              Plaintiffs,

-vs-

DAVID OTTO,

              Defendant.

Case No. 21-cv-11599

Hon. Nancy G. Edmunds, USDJ

Hon. Kimberly G. Altman, USMJ

## AMENDED COMPLAINT

William S. Cook (P68934)
WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
17197 N. Laurel Park Drive, Suite 201
Livonia, MI  48152
313-327-3100
william.cook@wilsonelser.com

Mark G. Ledwin, Esq.
WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
1133 Westchester Avenue
White Plains, New York 10604
(914) 872-7148
mark.ledwin@wilsonelser.com

*Attorneys for Plaintiffs*

260791796v.1

Plaintiffs Hartford Underwriters Insurance Company, Twin City Fire Insurance Company, Hartford Fire Insurance Company, Property and Casualty Insurance Company of Hartford, Trumbull Insurance Company, and Hartford Casualty Insurance Company (collectively, "*Plaintiffs*" or "*The Hartford*"), by and through their attorneys, as and for their Amended Complaint against Defendant David Otto, allege as follows:

## Nature of Action

1. This is an action for a declaratory judgment. Plaintiffs seek a declaratory judgment that the Court may pierce the corporate veil of Omega Resources Solutions, LLC ("*Omega*") and hold Defendant David Otto ("*Defendant*" or "*Otto*") individually liable for the judgment of $1,409,814.00 entered in favor of Plaintiffs and against Omega in *Hartford Underwriters Insurance Company, et al. v. Omega Resources Solutions, LLC*, Case No. 2:28-cv-12907, pending in the U.S. District Court for the Eastern District of Michigan ("*Hartford Underwriters I*"), plus accrued post-judgment interest.

## Parties

2. Plaintiffs Hartford Underwriters Insurance Company, Hartford Fire Insurance Company, and Trumbull Insurance Company are Connecticut corporations which maintain their principal place of business at One Hartford Plaza, Hartford, CT 06155.

3. Plaintiffs Hartford Casualty Insurance Company, Twin City Fire Insurance Company, and Property and Casualty Insurance Company of Hartford are Indiana corporations which maintain their principal place of business at One Hartford Plaza, Hartford, CT 06155.

4. All Plaintiffs (collectively referred to hereinafter as "Plaintiffs") are member companies of The Hartford Financial Services Group, Inc. and are engaged in the business of insurance.

5. Defendant David Otto is a citizen of the State of Michigan. Otto is the sole owner and sole member of Omega Resources Solutions, LLC ("Omega"), a Michigan limited liability company which maintains its principal place of business at 13900 Lakeside Circle, Suite 200, Sterling Heights, MI 48313.

### Jurisdiction and Venue

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because it involves citizens of different states and an amount in controversy exceeding the sum of $75,000.00, exclusive of interest and costs.

7. Venue in the Eastern District of Michigan is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) in that it is the district where defendant Otto resides and where a substantial part of the events giving rise to this action occurred.

8. This action seeks declaratory relief pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57.

### Background Facts

**A.  The insurance contract and unpaid premiums.**

9. Omega was in the business of providing merchandising and product demonstration services for its clients at various third-party stores and retail locations nationwide. Omega supplied all of the employees and labor for these services and passed

260791796v.1

on certain of these employee costs to its clients, including the cost of premiums for workers compensation insurance for the employees it supplied.

10. At the request of Omega, Plaintiffs issued Workers Compensation Insurance Policy No. 42 WE CP3934 which provided Omega with workers' compensation insurance coverage for its employees on a nationwide basis for the period of January 1, 2015 to January 1, 2016, and January 1, 2016 to January 1, 2017 (the "*Policy*").

11. Pursuant to the Policy, Omega agreed to pay certain premiums to Plaintiffs which were subject to annual audits. The audit results for the 2015-16 and 2016-17 Policy periods (the "*Audits*") showed that Omega owed Plaintiffs additional premiums for the insurance coverage provided by the Policy in the amount of $1,374,967.00 (the "*Additional Premiums*").

12. There were several reasons for the assessment of the Additional Premiums, including, without limitation: (i) a significant increase in Omega's payroll during the 2015-16 Policy period from an estimated $9,089,800 to an *actual $23,579,682*; (ii) Omega's submission of improper employee code designations at the inception of the Policy; and (iii) Omega's failure to cooperate with the Audits such as, for example, failing to segregate its payroll by employee classification codes, and refusing to provide Plaintiffs with reasonably requested information and documents pertaining to the actual activities undertaken by its employees at various job sites during the 2015-16 and 2016-17 Policy periods.

13. We also note that during the relevant time period, Omega incurred at least $1.3 million in workers compensation claims which were not consistent with the simple "retail" employee classification code estimated by Omega at the inception of the Policy.

14. On or about October 2, 2017, Plaintiffs sent Omega a Final Insurance Bill setting forth the Additional Premiums owed under the Policy and demanding payment as required by the Policy. Plaintiffs' counsel then sent a letter to Omega demanding payment and threatening legal action if the premiums were not paid.

15. Before Plaintiffs could file their own lawsuit, on December 1, 2017, Omega filed an administrative appeal with the Michigan Department of Insurance and Financial Services seeking a review of Plaintiffs' assessment of the Additional Premiums after the completion of the Audits under the Policy. Plaintiffs timely responded to the administrative appeal and disputed the claims asserted by Omega.

16. For a year and a half, Omega took every opportunity to delay the administrative appeal, including refusing to cooperate with or respond to Hartford's discovery demands. On May 18, 2018, Omega's counsel filed a motion to withdraw on the grounds that Omega had gone out of business and could not pay his fees.

17. On July 27, 2018, Administrative Law Judge Christopher S. Saunders entered an order dismissing Omega's administrative appeal *with prejudice* due to Omega's willful failure to prosecute the appeal and to otherwise comply with its discovery obligations. See **Exhibit A.**

### B. Plaintiffs secure a judgment against Omega.

18. On September 17, 2018, Plaintiffs filed their complaint against Omega in *Hartford Underwriters I*. Plaintiffs alleged that Omega had breached the insurance contract in failing to pay the Additional Premiums and sought damages in the amount of $1,374,967.00, plus pre- and post-judgment interest and costs. (*Hartford Underwriters I*, ECF No. 1). *See* **Exhibit B.**

19. Through the same counsel that had previously withdrawn from the administrative appeal, Omega filed an answer in *Hartford Underwriters I*. On November 16, 2018, Omega's counsel filed his second motion to withdraw. The motion again stated that Omega had gone out of business and was unable to pay counsel. The motion stated further that Omega agreed that it would have 30 days to retain new counsel and, if counsel was not retained within that time frame, Plaintiffs could file a motion for default judgment. (*Hartford Underwriters I*, ECF No. 6)

20. On December 12, 2018, the Court in *Hartford Underwriters I* issued a text only order granting the motion to withdraw and ordering Omega to obtain new counsel and to file an appearance within 30 days. Omega did not comply with this order. Accordingly, on February 1, 2019, Plaintiffs filed a motion for default judgment in *Hartford Underwriters I*. (*Hartford Underwriters I*, ECF No. 7)

21. On May 20, 2019, this Court struck Omega's answer in *Hartford Underwriters I*, granted Plaintiffs' motion for default judgment, and entered a judgment

6

260791796v.1

for Plaintiffs and against Omega in the total amount of $1,409,814.00 (the "*Judgment*"). *See* **Exhibit C**.[1]

### C. Plaintiffs' efforts to collect the judgment.

22. In July 2019, Plaintiffs served Writs for Garnishment seeking payment of the judgment from several banks known to have done business with Omega in the past. These Writs were returned unexecuted on the grounds that no open accounts in the name of Omega could be found, or that any such accounts had been emptied and closed.

23. Notably, Citizens Bank's garnishee disclosures stated that Omega had closed its account there on April 15, 2018 – during the pendency of the Omega's administrative appeal and a mere month before Omega's counsel filed his motion to withdraw on the grounds that Omega had gone out of business. (*Hartford Underwriters I*, ECF Nos. 24, 26).

### D. Post-judgment discovery.

24. In addition to the foregoing writs for garnishment, Plaintiffs conducted post-judgment discovery in an effort to determine if it could collect the judgment from

---

[1] Any issues related to the Audits, the Additional Premiums and the amounts owed to Plaintiffs by Omega are not the subject of this action. As a result of the dismissal of the administrative appeal with prejudice, and the entry of the Judgment, these issues have been fully and finally decided and thus are entitled to preclusive effect under principles of *res judicata* and *collateral estoppel*. *See Dietrich v. Sun Exploration & Prod. Co.*, 784 F. Supp. 383, 388 (E.D. Mich. 1992) ("Michigan recognizes the res judicata effect of administrative proceedings."); *Williams v. Twp. Of Waterford*, 2019 U.S. Dist. LEXIS 218799 (E.D. Mich. 2019) ("In Michigan a default judgment is treated the same as a litigated judgment for purposes of res judicata and is considered a final decision on the merits.").

either Omega or Otto personally, including the taking of several depositions. Omega retained new counsel to assist in responding to the post-judgment discovery.

25. As noted, Otto is the sole member and owner of Omega, as well as its CEO. A true and correct copy of excerpts from Otto's deposition transcript is annexed hereto as **Exhibit D.** Otto generally disclaimed knowledge of any specific financial transactions involving Omega and instead deferred to Michael Zybura.

26. Michael Zybura ("Zybura") is the director of finance for America's Back Office, another of Otto's entities. A true and correct copy of his deposition transcript is annexed hereto as **Exhibit E**. Zybura testified in pertinent part as follows:

   a. Zybura is responsible for accounting, finance, taxes, and compliance for all of Otto's entities for which Otto acts as sole owner, manager, member and/or shareholder, including Omega. **(Exhibit E, pp. 5-6, 9, 15)**

   b. Zybura is paid by his official employer, AES Human Capital Resources Inc., a company also solely owned by Otto, and does work for all of Otto's corporate forms, which he believed numbered about sixteen currently active entities. At Otto's direction, Zybura transferred funds from Omega to these sixteen entities after the judgment was entered in *Hartford Underwriters I* in order to avoid payment of the judgment. **(Exhibit E, pp. 7-9, 11, 25, 49)**

   c. At Otto's direction, Zybura transferred funds designated as "workers' compensation premium profits" to another entity wholly owned and controlled by Otto named America's Back Office Midwest, which also began to conduct the same business as Omega. **(Exhibit E, pp. 49, 62-63)**

8

260791796v.1

d. There were no written contracts or agreements between Omega and Otto's other companies who received the benefit of Omega's cash, nor any apparent consideration paid for such transfers other than "management fees." **(Exhibit E, pp. 22-23; Exhibit F, pp. 49-50)**

e. At Otto's direction, funds were withdrawn from Omega's accounts at irregular intervals and not in accord with Omega's operating agreement, bylaws, or consistent with any invoice or other payment arrangement or plan. **(Exhibit E, pp. 64-65)**

f. After Otto decided to close down Omega, all of Omega's clients were moved to another entity solely owned by Otto called America's Bank Office Inc. Midwest. **(Exhibit E, pp. 62-63)**

g. Otto paid himself in excess of $2.6 million for managing Omega's payroll functions through his various entities, while at the same time he caused Omega to fail to pay its significant workers' compensation premiums to Plaintiffs for payroll of more than $24 million. **(Exhibit E, pp. 29-30, 40)**

h. Omega collected $1,662,251.00 in workers' compensation insurance payments from its customers, but failed to pass on such payments to Plaintiffs for the insurance coverage they provided. Rather, Omega booked these payments as profits and eventually transferred all that cash to Otto or other entities he controlled. In addition, Omega and Otto charged these customers $2.6 million in management fees and $443,539 in "administrative" fees. **(Exhibit E, pp. 48-49, 62, 75-78)**

9

27. Anthony Sabatella is employed by Otto's company America's Back Office as its risk manager; he is also Otto's son and was hired by Otto in 2012 when he (Sabatella) graduated from college. A true and correct copy of Sabatella's deposition transcript is annexed hereto as **Exhibit F**. Sabatella testified in pertinent part as follows:

   a. At Otto's direction, Sabatella purchased the sole membership interest of Omega from its then-owner, Craig Sherman, in 2014. Sabatella thus became the sole "owner" and "CEO" of Omega, even though he admitted that his involvement with Omega was purely on paper with his purchase of Craig Sherman's membership interest, which he later transferred to his father, Otto, for no consideration. **(Exhibit F, pp. 26-28, 43-44, 49; Exhibit E, pp 9)**

   b. Sabatella admitted that while he was the sole member of Omega he did not execute any contracts for Omega, did not write checks for Omega, did not hire employees for Omega, did not direct how any monies were spent, did not divide up any of the profits or losses for the business, and did not direct anyone to do anything on behalf of Omega. All of these decisions were made by Otto. *Id.*

   c. At Otto's direction, Sabatella signed the purchase agreement for Omega because Otto could not sign the agreement himself due to an insurance regulation issue. Sabatella was not compensated for the purchase of Omega. (**Exhibit F, p. 38, 51; Exhibit E, pp 9)**

   d. Sabatella was not compensated in any form (i.e., bonuses, distributions, wages, salary, etc.) for being the sole member of Omega; only Otto was

compensated by Omega and Sabatella did as he was told by Otto. (**Exhibit F, pp. 38-39**).

e. At Otto's direction, Sabatella later transferred all membership interest in Omega to Otto. Sabatella was not compensated by Otto for this transfer. *Id*.

**E. Plaintiffs' motion for post-judgment discovery and execution.**

28. On October 29, 2020, Plaintiffs filed a post-judgment motion in *Hartford Underwriters I* pursuant to Federal Rule of Civil Procedure 69 presenting the foregoing evidence and seeking the following relief: (1) a finding that David Otto used Omega as his own personal instrumentality and thus the corporate veil of Omega should be pierced such that the Judgment against Omega is to be entered and recorded against Otto personally; (2) allowing post-judgment discovery against Otto personally and any business in which he may have an interest, membership, or any form of ownership, together with all personal assets; and (3) allowing the judgment to be executed against Otto personally and any of his assets. (*Hartford Underwriters I*, ECF No. 27)

29. On May 21, 2021, Magistrate Judge Kimberly Altman issued her Report and Recommendation. (*Hartford Underwriters I*, ECF No. 43; 2021 U.S. Dist. LEXIS 108884; 2021 WL 2388976). *See* **Exhibit G.** Magistrate Judge Altman recommended that Plaintiffs' motion be denied on the ground that, under Michigan law, Plaintiffs cannot pierce Omega's corporate veil in order to hold Otto personally liable for the judgment by motion because Otto was not a party to *Hartford Underwriters I*. (*Hartford Underwriters I*, ECF No. 43, PageID.604-PageID.611). Instead, Plaintiffs must bring a separate action

11

against him or move to join him as a party. (*Hartford Underwriters I*, ECF No. 43, PageID.611.)

30. Magistrate Judge Altman then considered the merits of Plaintiffs' argument that the corporate veil should be pierced "for the purpose of completeness." (*Hartford Underwriters I*, ECF No. 43, PageID.612). In this regard, Magistrate Judge Altman observed that Plaintiffs "appear to have established" that Omega's corporate veil should be pierced for purposes of holding Otto personally liable for the judgment against Omega in *Hartford Underwriters I*:

> Michigan courts will not pierce the corporate veil unless (1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss. Regarding the second element, Michigan courts have held that a breach of contract can be the kind of wrong that justified piercing a corporate veil if the corporate form has been abused.
>
> First, Plaintiffs appear to have established that [Omega] was a mere instrumentality of Otto. [Omega] collected $1,662,251 from its clients for workers compensation premiums, but the majority of that money was sent to a management company owned by Otto, rather than to the workers compensation carriers, here Plaintiffs. Second, [Omega] breached the contract it had with plaintiffs for workers compensation insurance. The result of that breach of contract was the default judgment awarding damages in the amount of $1,409,814. Third, Plaintiffs have suffered a loss of $1,409,814. If Plaintiffs are unable to hold Otto personally liable for that sum, Plaintiffs would be unable to recoup the money they lost because it seems that Otto has removed all assets from [Omega]. By directing Zybura to send the money collected from clients for workers compensation premiums to a management company owned by Otto, rather than remit those premiums to Plaintiffs, Otto exercised [his] control over [Omega] in a way that wronged Plaintiffs. Under these circumstances, Michigan law would appear to allow Plaintiffs to pierce [Omega's] corporate veil and seek damages from Otto.

*See* **Exhibit G** (*Hartford Underwriters I*, ECF No. 43, PageID.613-PageID.614).

31.     On June 9, 2021, the District Court in *Hartford Underwriters I* entered an order accepting and adopting Magistrate Judge Altman's Report and Recommendation.  *Id*. (*Hartford Underwriters I*, ECF No. 44)

## AS AND FOR A FIRST CAUSE OF ACTION
## (Declaratory Judgment)

32.     Plaintiffs hereby re-allege and incorporate by reference each of the allegations set forth above in paragraphs 1 through 31 as if fully set forth herein.

33.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), *et seq.*, empowers a United States District Court "[i]n a case of actual controversy within its jurisdiction" and "upon the filing of an appropriate pleading" to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Federal Rule of Civil Procedure 57 provides that "the existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate" and that "the court may order a speedy hearing of a declaratory judgment action."

34.     Plaintiffs herein seek a declaratory judgment that the Court may pierce Omega's corporate veil and hold Otto individually liable for the judgment entered against Omega in *Hartford Underwriters I*.  A declaratory judgment action is an appropriate action for seeking to pierce the corporate veil in order to hold a corporation's sole shareholder individually liable for a judgment entered against the corporation. *See, e.g., LePine v. Rosenbaum*, 2020 U.S. Dist. LEXIS 94779 (E.D. Mich. June 1, 2020), *33-*40.

13

35. Under Michigan law, a corporate veil may be pierced where the evidence shows that the corporate entity was a mere instrumentality of another entity or individual; the corporate entity was used to commit a fraud or wrong, including a breach of contract; and the plaintiff suffered an unjust loss. *See, e.g., LePine*, 2020 U.S. Dist. LEXIS 94779, *34 (collecting cases). *See also Daymon v Fuhrman*, 2004 Mich. App. LEXIS 2607, at *1 (Ct. App. Oct. 5, 2004) (The Michigan Court of Appeals affirmed the piercing of the corporate veil where plaintiffs sued defendant personally, alleging that the corporation had been rendered insolvent, precluding them from collecting their judgment, because of wrongful actions by defendant. The court found that "[t]he closing of business and transfer of the significant corporate assets to defendant without notice to plaintiffs, recent judgment creditors, was wrong and caused injury to plaintiffs").

36. Here, as Magistrate Judge Altman observed in *Hartford Underwriters I*, the evidence as alleged in this Complaint shows that Omega was a mere instrumentality of Otto; that, at Otto's direction, Omega breached its contract with Plaintiffs for workers compensation insurance; and that Plaintiffs have been damaged in the amount of $1,409,814.00. Omega's corporate veil should accordingly be pierced and Otto should be held individually liable for the judgment in favor of Plaintiffs and against Omega in *Hartford Underwriters I*.

## **REMEDY REQUESTED**

**WHEREFORE**, for the reasons stated above, Plaintiffs Hartford Underwriters Insurance Company, Twin City Fire Insurance Company, Hartford Fire Insurance Company, Property and Casualty Insurance Company of Hartford, Trumbull Insurance Company, and Hartford Casualty Insurance Company respectfully request that this Court enter a declaratory judgment in favor of them and against Defendant David Otto as follows:

1. Declare, pursuant to 28 U.S.C. § 2201, *et seq.*, and Federal Rule of Civil Procedure 57, that the corporate veil of Omega Resources Solutions, LLC is pierced as between it and Plaintiffs in *Hartford Underwriters I*;

2. Declare, pursuant to 28 U.S.C. § 2201, *et seq.*, and Federal Rule of Civil Procedure 57, that Defendant David Otto is individually liable for the Judgment entered against Omega Resources Solutions, LLC and in favor of Plaintiffs in *Hartford Underwriters I* the same as if Otto were an individually named defendant and judgment debtor therein;

3. Award Plaintiffs their reasonable attorney fees and costs in bringing this action with interest thereon; and

4. Award Plaintiffs any further relief that this Honorable Court deems appropriate in law or equity.

Dated: October 22, 2021

Respectfully submitted,

WILSON ELSER MOSKOWITZ
 EDELMAN & DICKER, LLP

By: */s/ William S. Cook*
William S. Cook (P68934)
500 Griswold Street, Suite 2300
Detroit, Michigan 48226
Tel: 313-327-3100
Email: william.cook@wilsonelser.com

-and-

Mark G. Ledwin
WILSON ELSER MOSKOWITZ
 EDELMAN & DICKER, LLP
1133 Westchester Avenue
White Plains, NY 10604
Tel: 914-872-7148
Email: mark.ledwin@wilsonelser.com

*Attorneys for Plaintiffs*

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument was served upon the attorneys of record of all parties to the above cause, by USDC Eastern District E-Filing on October 22, 2021.

By: /s/ Dacia J. Bowers
    **DACIA J. BOWERS**

260791796v.1