UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARTFORD UNDERWRITERS
INSURANCE COMPANY,
TWIN CITY FIRE INSURANCE
COMPANY, HARTFORD FIRE
INSURANCE COMPANY,
PROPERTY AND CASUALTY
INSURANCE COMPANY OF HARTFORD,
TRUMBULL INSURANCE COMPANY, and
HARTFORD CASUALTY INSURANCE
COMPANY,

Case No. 21-cv-11599

Hon. Nancy G. Edmunds,

Mag. Judge Kimberly G. Altman

Plaintiffs,

-vs-

DAVID OTTO,

Defendant.

PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT UNDER RULE 56 (ECF No. 18)

William S. Cook (P68934)
WILSON ELSER MOSKOWITZ
 EDELMAN & DICKER, LLP
17197 N. Laurel Park Drive, Suite 201
Livonia, Michigan 48152

Mark G. Ledwin
WILSON ELSER MOSKOWITZ
 EDELMAN & DICKER, LLP
1133 Westchester Avenue
White Plains, New York 10604

*Attorneys for Plaintiffs*

i

<u>CONCISE STATEMENT OF THE ISSUES PRESENTED</u>

Should this Court pierce the corporate veil and hold defendant David Otto individually responsible for the judgment plaintiffs obtained against Otto's wholly-owned company, Omega Resources Solutions, LLC?

Plaintiffs answer yes.

Defendant answers no.

273455659v.1

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY

There is no one controlling authority or case law, but some of the relevant decisions that address piercing the corporate veil under Michigan law include:

-        *EPLET, LLC v. DTE Pontiac North, LLC*, 984 F.3d 493 (6th Cir. 2021);

-        *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783 (6th Cir. 2007); and

-        *Foodland Distributors v. Al-Naimi*, 220 Mich. App. 453; 559 N.W.2d 379 (1996).

273455659v.1

I.      INTRODUCTION

There are cross motions for summary judgment before the Court on the issue of whether this Court should pierce the corporate veil and hold David Otto, the sole member of Omega Resources Solutions, LLC, responsible for paying the $1.4 million judgment plaintiffs obtained against Omega. Prior to plaintiffs filing this lawsuit, Magistrate Judge Altman, during the post-judgment proceedings in the earlier lawsuit against Omega, determined that the elements to pierce the corporate veil were met. But because Magistrate Judge Altman also concluded that the proper way to do that was through a separate lawsuit where Otto is a party, plaintiffs filed this lawsuit to pierce the corporate veil and now ask this Court to declare, as Magistrate Judge Altman did before, that piercing the corporate veil is warranted based on the facts of the case.

Nothing has changed since Magistrate Judge Altman made her ruling, which was subsequently adopted by this Court. That is why plaintiffs filed their motion for summary judgment (ECF No. 16), arguing the facts establish, just as found before, that piercing the corporate veil was appropriate. The necessary elements for this relief are satisfied because Omega was a mere instrumentality for Otto, Omega breached its contract with plaintiffs, and plaintiffs suffered a loss as a result of Omega's actions.

Otto, not surprisingly, feels differently and despite Magistrate Judge Altman's prior opinion, believes the facts show Omega was not a mere instrumentality for him. The undisputed facts, however, show that, at Otto's direction, Omega collected—but did not pay—plaintiffs the money they were owed and that around the time Omega ceased operating, Omega transferred money and clients to Otto's related businesses, all while refusing to pay one cent of the money it owed plaintiffs. These facts and more establish that piercing the corporate veil is appropriate. This Court should deny Otto's summary judgment motion and grant plaintiffs' summary judgment motion.

II.   <u>FACTUAL BACKGROUND</u>

Plaintiffs adequately described the facts in their brief in support of their motion for summary judgment (ECF No. 16), but a timeline may be helpful for the Court to understand how events transpired between plaintiffs and Omega and why piercing the corporate veil is appropriate.

| Date | Event |
| --- | --- |
| January 1, 2014 | Anthony Sabatella, who is Otto's son, bought Omega at Otto's request. Otto did not purchase Omega due, allegedly, to a vague and unclear justification of "risk management |

2

|  | purposes."[1] (Ex. K—Otto dep., pg. 9, 73[2]; Ex. M—Sabatella dep., pg. 18-19, 27-28) |
|---|---|
| January 1, 2015 - January 1, 2017 | Plaintiffs issued insurance policies to Omega for workers' compensation coverage. (Ex. A—*Hartford I* Complaint, ⁋ 9) |
| October 2, 2017 | Plaintiffs' audits showed that Omega owed just under an additional $1.4 million in premiums, and plaintiffs issued a bill to Omega for that amount. (Ex. A—*Hartford I* Complaint, ⁋ 12-16) |
| December 1, 2017 | After Plaintiffs' counsel made a demand on Omega for payment, Omega filed an action with the Michigan Department of Insurance and Financial Services (DIFS) seeking a review of plaintiffs' assessment of the additional premiums after the completion of the audits. (Ex. A—*Hartford I* Complaint, ⁋ 17; Ex. B—DIFS proposal and order) |
| December 31, 2017 | Omega ceased operating but did not formally dissolve. (Ex. L—Zybura dep., pg. 27-28, 36) |
| December 2017 – January 2018 | Omega transferred $310,000 to other Otto-related entities, including the company—America's Back Office Midwest—that took on Omega's clients. At about the same time, Otto caused Omega to transfer all of its client to other entities that he owned and controlled. (Ex. L—Zybura dep., pg. 58-65; Ex. W—Omega bank statements / financial documents; ECF No. 18, PageID 1691-1692) |
| January 10, 2018 | Otto bought Omega from his son. (Ex. K—Otto dep., pg. 74-75; Ex. M—Sabatella dep., pg. 33) |

---

[1] Strangely, Otto says *he* purchased Omega through his son (ECF No. 18, PageID 1637) and then refers to Omega as his company throughout his motion (ECF No. 18, PageID 1638 ["after Otto purchased Omega"]). Otto, however, did not purchase Omega until 2018. This is further evidence that Otto was acting as Omega's alter ego even though he, technically, did not own the company until 2018.

[2] Exhibits are identified based on how they are classified for plaintiffs' summary judgment motion. (ECF No. 16)

3

| | |
|---|---|
| May 22, 2018 | Omega's counsel withdrew from the DIFS action (Ex. B—DIFS proposal and order) |
| July 27, 2018 | DIFS dismissed Omega's administrative action because Omega failed to prosecute the claim or produce discovery. (Ex. B—DIFS proposal and order) |
| September 17, 2018 | Plaintiffs filed their initial lawsuit against Omega seeking to collect the premiums Omega failed to pay. (Ex. A—*Hartford I* Complaint) |
| May 20, 2019 | The Court entered the $1.4 million judgment in favor of plaintiffs and against Omega. (Ex. G—Judgment) |
| 2019-2020 | Plaintiffs pursued post-judgment discovery in an effort to collect on the judgment. (Ex. H—Requests and Wrists for Garnishment; Ex. I—Garnishee Disclosure forms; Ex. K—Otto dep.; Ex. L—Zybura dep.; Ex. M—Sabatella dep.) |
| October 29, 2020 | Plaintiffs filed a post-judgment motion to pierce Omega's corporate veil and hold Otto liable for the judgment. (Ex. N—Plaintiffs' motion) |
| May 21, 2021 | Magistrate Judge Altman issued her Report and Recommendation finding the elements to pierce the corporate veil against Otto were satisfied while also finding that plaintiffs would need to pursue that relief in a separate lawsuit. (Ex. S—Report and Recommendation) |
| June 9, 2021 | This Court adopted Magistrate Judge Altman's Report and Recommendation. (Ex. T—Opinion and Order) |
| July 8, 2021 | Plaintiffs filed their present declaratory judgment action against Otto seeking to pierce the corporate veil. (ECF. No. 1) Plaintiffs later filed an amended complaint on October 22, 2021. (ECF No. 8) |

In summary, the facts show the following:  the audits established Omega owed

plaintiffs another $1.4 million in premiums; Omega refused to pay; Omega then

4

caused delay during the administrative action; Omega stopped doing business; Omega transferred all of its money to Otto's other entities; Omega failed to further prosecute the DIFS administrative appeal; Omega appeared in but then defaulted in plaintiffs' collection action; and plaintiffs have not been paid the money Omega owes them.

III.   STANDARD OF REVIEW

If the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," then a trial court should grant summary judgment in the moving party's favor. Fed. R. Civ. P. 56(a).

IV.   ARGUMENT

A. *Otto cannot re-litigate the merits of the underlying judgment. Those issues have been firmly decided and reduced to a judgment.*

As an initial point, this Court should reject any effort by Otto to re-litigate the underlying case. Otto attempts to do so by explaining why, in his opinion, the audits were wrong and how plaintiffs are really to blame for driving Omega out of business.[3] Otto's efforts, however, are incorrect both factually and legally.

---

[3] Curiously, Otto talks at length in his affidavit about the premium audit process (ECF No. 18-3), which appears inconsistent with his earlier deposition testimony where he said he did not participate in the audit process (Ex. K—Otto dep., pg. 88-89). Similarly, Otto deferred to Zybura to discuss financial information about Omega at his deposition (Ex. K—Otto dep, pg. 26, 27, 28, 30, 45, 52, 54, 58-59, 70, 80-81, 84-87), yet Otto discusses Omega's financial situation repeatedly in his affidavit (ECF No. 18-3), another apparent inconsistency.

As plaintiffs have explained before, Omega owed the additional money as a result of audits that showed Omega's payroll increased from approximately $9,000,000 to over $23,000,000 and also due to inaccurate employee code designations.[4] (Ex. A—*Hartford I* Complaint, ¶ 14) The increased premium was more than justified and precisely why this Court previously entered a default judgment for that amount.

Regardless, Otto cannot re-litigate or collaterally attack the judgment. *Thomas v. Khrawesh*, 2017 U.S. Dist. LEXIS 189362, at *2-*3 (E.D. Mich. Nov. 16, 2017) (Ex. 1). Omega had the opportunity to challenge the merits of plaintiffs' claims before and chose not to. Now that there is a judgment, the time to litigate the merits of the underlying case and the facts supporting the default judgment is over. Magistrate Judge Altman agreed when Otto attempted to do the same thing in the prior lawsuit, saying Otto's "arguments are irrelevant" and that the sole issue is "whether plaintiffs can pierce the corporate veil and hold Otto personally liable for the default judgment entered against" Omega. (Ex. T—Report and Recommendation, pg. 6)

---

[4] Otto complains that Omega's premium tripled as a result of the audits (ECF No. 18, PageID 1640, 1641), but when the audits revealed *a $14 million difference in payroll*, it should be obvious that plaintiffs' risk was higher and, hence, the premiums would be higher.

6

The Michigan Supreme Court applies res judicata "broadly" to preclude re-litigation of claims where: (1) the prior action was decided on the merits; (2) both actions involved the same parties or their privies; and (3) the claims raised in the second action were or could have been raised and resolved in the first action. *Adair v. State*, 470 Mich. 105; 680 N.W.2d 386, 396 (2004) (citing *Sewell v. Clean Cut Mgmt., Inc.*, 463 Mich. 569; 621 N.W.2d 222 (2001)). In other words, the doctrine does not just bar claims already litigated, but "every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised, but did not." *Id*.

Accordingly, this Court should ignore Otto's arguments challenging the merits of the underlying litigation. As Magistrate Judge Altman said, the only issue now is whether piercing the corporate veil is appropriate, and it is for this case.

> B. *Contrary to Otto's argument, this Court should follow Magistrate Judge Altman's prior opinion concluding that it is appropriate to pierce the corporate veil.*

Otto asks this Court to ignore Magistrate Judge Altman's decision in the prior lawsuit where she determined that all the elements to pierce the corporate veil were present. (ECF No. 18, PageID 1643) Otto does not want this Court to follow what Magistrate Judge Altman decided for the obvious reason that the result is bad for him. He, of course, couches this in terms of a legal argument, saying Judge Altman's ruling is *dicta*. (ECF No. 18, PageID 1643) It is true that Magistrate Judge Altman's

7

core ruling was that plaintiffs needed to either add Otto as a party to the prior case or sue him in a separate lawsuit in order to effectuate the piercing of the corporate veil (Ex. T—Report and Recommendation, pg. 6-15), but this Court should not overlook Judge Altman's other rulings. She, after all, made those conclusions for a reason. She analyzed the same facts that the parties have presented to this Court, and she came to the conclusion that piercing the corporate veil was appropriate. (Ex. T—Report and Recommendation, pg. 15-17) Magistrate Judge Altman reached the right result for all the reasons plaintiffs explain in their motion for summary judgment. (ECF No. 16)

To be clear, plaintiffs are not saying this Court should follow Magistrate Judge Altman's opinion because it is binding. Rather, plaintiffs are saying this Court should follow Magistrate Judge Altman's opinion because it is correct. It should be obvious from reading Judge Altman's opinion that she thoroughly analyzed the law and the facts and came to the conclusion that the facts supported piercing the corporate veil. (Ex. T—Report and Recommendation) Moreover, Otto has not presented any new evidence to change that conclusion.

Otto further challenges Magistrate Judge Altman's opinion by saying there was an "incomplete record" and Otto's prior counsel spent very little time arguing the merits of the issue and, instead, focused on the procedural argument. (ECF No. 18, PageID 1643) Neither point is true. The record is the same as it is now, and Otto

8

never explains how the facts are any different. And there's simply no truth to Otto's argument that his prior attorneys paid little attention to the merits of plaintiffs' request to pierce the corporate veil because they were focusing on the procedural arguments. (ECF No. 18, PageID 1643) Otto was represented by counsel who made every effort to avoid the Court deciding then that the corporate veil should be pierced.  (Ex. O—Otto response to motion) In fact, Otto's prior counsel spent more time arguing the substantive point than the procedural one. (Ex. O—Otto response to motion) In the end, Magistrate Judge Altman considered the same facts and the same legal arguments and decided against Otto on the merits. There was nothing incomplete about the record or Otto's arguments in the prior action, nor is there anything new presented now.

Because the parties rely on the same facts now as they did then, nothing factually has changed since Magistrate Judge Altman issued her opinion, and Otto's prior counsel aggressively contested plaintiffs' claims, this Court should make the same findings Magistrate Judge Altman did. She performed the proper analysis and reached the right result.

> ### C. This Court should deny summary judgment for Otto and grant summary judgment for plaintiffs because all the elements to pierce the corporate veil are satisfied.

Plaintiffs adequately summarized the relevant parts of Michigan law on piercing the corporate veil in their own motion for summary judgment (ECF No. 16,

PageID 486-487), but to fully analyze Otto's arguments, it is worth revisiting the basic elements before addressing Otto's misplaced points.

Under Michigan law, a court may pierce the corporate veil if three elements are met: (1) the corporate entity was used as a mere instrumentality of another entity or individual, (2) the corporate entity was used to commit a fraud or wrong, and (3) the plaintiff suffered an unjust loss. *EPLET, LLC v. DTE Pontiac North, LLC*, 984 F.3d 493, 499 (6th Cir. 2021).

Otto does not challenge the third element requiring proof of an unjust loss. His argument, instead, appears to focus primarily on the first element (mere instrumentality) while possibly arguing that the second element (fraud or wrong) is not met. Plaintiffs will explain, first, why the second element is met and then focus on Otto's main argument—that Omega was not a mere instrumentality of Otto.

> a. *The second element is met because Omega breached its contract with plaintiffs.*

Otto never says so expressly, but it appears he argues the second element is not met because there is no evidence Omega was used to commit a fraud. (ECF No. 18, PageID 1646-1650) The problem for Otto is a legal one. He relies on the wrong standard. Otto assumes the only way plaintiffs can establish the second element is by showing Omega committed a fraud. That's not true. Fraud is one way to prove the second element, but the requirement is not that narrow. Piercing the corporate veil is appropriate if "the corporate entity was used to commit a fraud *or wrong*."

10

*EPLET*, 984 F.3d at 499 (emphasis added). Moreover, courts have held that, under Michigan law, a breach of contract qualifies as the type of wrong that supports piercing the corporate veil. *Id* ("Michigan courts have held that a breach of contract can be the kind of wrong that justifies piercing the corporate veil if the corporate form has been abused."); *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 799-800 (6th Cir. 2007) ("we hold that, assuming that a jury concluded that SKI could recover for breach of contract, this breach would constitute a 'fraud or wrong' for the purpose of veil-piercing liability"); *Papo v. Aglo Restaurants of San Jose, Inc.*, 149 Mich. App. 285, 302 n.15; 386 N.W.2d 177 (1986) ("The Supreme Court, on more than one occasion, has acknowledged that the corporate veil can be pierced in the absence of fraud.").

There should be no dispute that this element is met because Omega committed a "wrong" by breaching its contract with plaintiffs and failing to pay the premiums owed on the insurance policies, which was established through the judgment in the original lawsuit.

      *b. The first element is met because, at Otto's direction, Omega refused to pay plaintiffs and transferred money to an Otto-owned company to avoid paying Omega.*

The first element requires proof that Omega was a mere instrumentality of Otto. In their motion for summary judgment, plaintiffs explained that this element was satisfied for two primary reasons. First, the evidence proved that Omega

11

collected money from its clients to pay the premiums on the insurance policies plaintiffs issued to Omega, but, *at Otto's direction*, Omega did not pay plaintiffs and, instead, transferred the money to the Otto-run company, America's Back Office Midwest, that took over Omega's clients. (ECF No. 16, PageID 488-489) Second, during the time Omega was refusing to pay plaintiffs the money it owed them, Omega paid substantial money to Otto's other companies while Omega was winding down or had ceased operating. (ECF No. 16, PageID 489) These facts, plaintiffs argued, prove that Omega was not operating on its own but at Otto's personal discretion. (ECF No. 16, PageID 489)

This is similar to what Magistrate Judge Altman found before. She concluded that Omega "was a mere instrumentality of Otto" because Omega collected money from its client for workers' compensation premiums that should have gone to plaintiffs but "was sent to a management company owned by Otto." (Ex. T—Report and Recommendation, pg. 16) This Court should find Omega was a mere instrumentality of Otto for the reasons explained above and the reasons found by Magistrate Judge Altman before.

Otto disputes this and claims that Omega operated separately from Otto's other companies. In making this argument, Otto argues that Omega was adequately funded, maintained its own sets of books and records, and was actively engaged in business. Omega, Otto claims, was not a shell company designed to aid himself and,

thus, there is no basis to pierce the corporate veil. There are a few points to make about this and explain why this Court should reject Otto's arguments, pierce the corporate veil, and hold Otto liable for the judgment.

First, none of this is new evidence. Otto made the same points in his affidavit that he made at his prior deposition. He said Omega was a separate legal entity; his other entities had agreements, though not written ones, with his other businesses that worked together; and there was no commingling of funds between his companies. (Ex. K—Otto dep., pg. 23-25, 27, 35, 38, 48-51) And Otto's current arguments mirror the ones he made before (Ex. O—Otto's response to motion), but those arguments were not convincing to Magistrate Judge Altman, nor should they be to this Court.

This leads to the second point: while Omega may or may not have been separate from Otto's other companies on paper, the undisputed facts show that when plaintiffs were on the verge of commencing litigation to recover the $1.4 million in unpaid premium, Otto directed Omega not to pay plaintiffs and Omega transferred money and clients to Otto's other entities in an effort to make Omega uncollectible. These facts show that piercing the corporate veil is appropriate.

Courts have held that a person or other company exercising control over another entity establishes the first element. In *EPLET*, the plaintiff alleged that DTE Energy exercised control over its subsidiary that caused the subsidiary to breach its

13

contractual obligation to the plaintiff, and the court found those allegations established grounds to pierce the corporate veil. "By allegedly directing its wholly owned subsidiary to stop maintaining the Powerhouse and thereby breach its contractual obligations, DTE Energy exercised its control over [its subsidiary] in a way that wronged [plaintiff]." *Id.* at 500. "Under these circumstances, Michigan law allows RACER to pierce [the subsidiary's] corporate veil and seek damages from DTE Energy." *Id.*

Moreover, in *Foodland Distributors v. Al-Naimi*, 220 Mich. App. 453, 457; 559 N.W.2d 379 (1996), the court found the first element was satisfied because there was "an abundance of evidence" that a company called Metropolitan Grocery, Inc. was the instrumentality of an individual named Amir Al-Naimi. In that case, the president of the company did not take an active role in the business and Amir Al-Naimi was considered the de facto owner and operator of the company. *Id.*

*EPLET*, admittedly, dealt with a motion under Federal Rule of Civil Procedure 12(b)(6), not a summary judgment motion under Federal Rule of Civil Procedure 56, but the court's legal ruling in that case and in *Foodland Distributors*—that exercising control over a company and causing it to breach an agreement justifies piercing the corporate veil—is relevant and applies here.

14

The facts show that Otto exercised control over Omega and that Otto made the decision not to turn over money to plaintiffs that Omega collected for insurance premiums.

>   *A.*    That signifies that we collected $460,956 of premiums from our client for Workers' Compensation coverage that we have not remitted payment to carriers for.
>
>   *Q.*    And why was that not remitted?
>
>   *A.*    Owner's decision. (Ex. L—Zybura dep., pg. 49)

In other words, the money Omega collected to pay its insurance premiums did not go to plaintiffs by Otto's express design. On top of that, Otto and Omega made sure that, before Omega stopped operating, the remaining money Omega did have went to Otto-owned companies, including Otto's company that began servicing Omega's former clients, America's Back Office Midwest.

The net result of all these actions was that Omega was undercapitalized and no had assets, making it impossible for plaintiffs to collect money from Omega directly. Indeed, this is a situation that cries out for piercing the corporate veil and shows that Omega was the mere instrumentality of Otto. *EPLET, supra; see also Ryan Racing, LLC v. Gentilozzi*, 231 F. Supp. 3d 269, 277-281 (W.D. Mich. 2017) (finding that piercing the corporate veil was appropriate even where companies maintained separate books because the facts established one person exercised control over the entities and the company was unable to pay its liabilities). Otto directed

15

Omega how to act based on what was best for him, not for Omega and its creditor. He therefore did not treat Omega as separate from himself, which warrants piercing the corporate veil. *Herman v. Mobile Homes Corp.*, 317 Mich. 233, 246; 26 N.W.2d 757 (1947) ("If a corporation is owned and controlled by another and is manipulated by the owner for its own purposes and in its own interests to the prejudice of innocent third parties, or the public welfare, it may be necessary to limit such abuse of the corporate capacity or shield."); *Florence Cement Co. v. Vettraino*, 292 Mich. App. 461, 469-470; 807 N.W.2d 917 (2011); *Papo*, 149 Mich. App. at 302.

Notably, Otto does not dispute the key facts that support this conclusion. He does not dispute Zybura's testimony that he told Zybura not to pay plaintiffs the workers' compensation premiums. Likewise, Otto does not dispute that Omega transferred money to his other companies as it was winding down its business or had stopped operating. In fact, he admits it, saying Omega paid his other companies before it stopped operating. (ECF NO. 18, PageID 1642)

Additionally, Otto says that Omega was adequately capitalized (ECF No. 18, PageID 1646), but that is inaccurate. That may have been true for some period of time, but it is undisputed that Omega refused to pay plaintiffs the money that was specifically collected to pay insurance premiums and transferred money from Omega to other Otto-related entities, which made Omega underfunded and unable to pay plaintiffs' judgment against it. In other words, at the end of its business life,

16

not only did Omega not have enough money to pay its debt to plaintiffs, but (1) at Otto's direction, Omega purposefully did not pay plaintiffs with the remaining money that Omega had and (2) the money Omega did have all went to pay Otto's other companies. These circumstances show that Omega was intentionally taking steps to avoid paying plaintiffs, which is precisely the type of actions that justify piercing the corporate veil.

In short, while Otto argues that this Court should not pierce the corporate veil because he and his companies respected the corporate form and kept them separate, the facts show otherwise. It may be that, on paper, Omega was kept separate from Otto and his other entities, but the facts establish something else was going on. Otto was driving Omega's decisions throughout its existence even though he technically was not Omega's owner or president, including the decision to not pay plaintiffs their insurance premiums and to transfer Omega's assets to other Otto-owned companies rather than going to plaintiffs to pay the money Omega owed them. These facts show that Otto was directing Omega's decisions, those decisions were made in Otto's personal interest, and the result of those decisions was to undercapitalize Omega and avoid plaintiffs being able to collect from Omega. Under Michigan law, Omega was the mere instrumentality of Otto, making piercing the corporate veil appropriate.

V.    <u>CONCLUSION</u>

Magistrate Judge Altman previously reviewed the same facts as they exist now and concluded that it was proper to pierce Omega's corporate veil and make Otto liable for the $1.4 million judgment against Omega. Nothing Otto says in his motion should change that outcome. The facts establish that Omega was the mere instrumentality of Omega, Omega committed a wrong by breaching its contract with plaintiffs, and plaintiffs have suffered an unjustified loss as a result of Omega's actions. This Court should therefore deny Otto's motion for summary judgment and grant plaintiffs' competing motion instead.

> WILSON ELSER MOSKOWITZ
>  EDELMAN & DICKER, LLP
>
> By:  _/s/ William S. Cook_____
>     William S. Cook (P68934)
>     17197 N. Laurel Park Drive, Suite 201
>     Livonia, Michigan 48152
>     313-327-3100
>     william.cook@wilsonelser.com
>
> -and-
>
> WILSON ELSER MOSKOWITZ
>  EDELMAN & DICKER, LLP
> Mark G. Ledwin
> 1133 Westchester Avenue
> White Plains, New York 10604
> 914-872-7148
> mark.ledwin@wilsonelser.com
>
> *Attorneys for Plaintiffs*

18

<u>PROOF OF SERVICE</u>

The undersigned certifies that, on July 27, 2022, this document was electronically filed with the Clerk of the Court using the CM/ECF system.

/s/ William S. Cook
William S. Cook

19

# EXHIBIT 1

 Caution
As of: July 18, 2022 2:06 PM Z

## *Thomas v. Khrawesh*

United States District Court for the Eastern District of Michigan, Southern Division

November 16, 2017, Decided; November 16, 2017, Filed

Case No. 2:17-cv-10026

**Reporter**
2017 U.S. Dist. LEXIS 189362 *; 2017 WL 5494234

LYNNETTE THOMAS, Plaintiff, v. EDWAN KHRAWESH, Defendant.

**Prior History:** *Thomas v. Khrawesh, 272 F. Supp. 3d 995, 2017 U.S. Dist. LEXIS 158152 ( E.D. Mich., Sept. 27, 2017)*

**Counsel:** **[*1]** For Lynnette Thomas, Plaintiff: Charlotte Croson, Nacht Law, Ann Arbor, MI; Nicholas Roumel, Ann Arbor, MI.

For Edwan Khrawesh, Defendant: Edward L. Ewald, Jr., Landis & Day, PLC, Wixom, MI.

**Judges:** HONORABLE STEPHEN J. MURPHY, III, United States District Judge.

**Opinion by:** STEPHEN J. MURPHY, III

# Opinion

### OPINION AND ORDER AWARDING DAMAGES

Plaintiff Lynnette Thomas brought suit to enforce a judgment she received in a previous case, *Thomas v. Athlete's Foot*, Case No. 10-cv-12558 (the "Original Case"). The Court has determined that Plaintiff is entitled to judgment as a matter of law and also ordered the parties to submit supplemental briefing on damages. Plaintiff now seeks the following damages: (1) $105,512.50 pursuant to the judgment in the Original Case; (2) $20,534.13 in prejudgment interest; (3) $2,683.80 in costs for the present action; and (4)

$42,035.75 in attorney's fees for the present action. ECF 20, PgID 675. The Court will address each request in turn and award Plaintiff $126,446.63.

I. Judgment in the Original Case

Plaintiff is entitled to the entire judgment from the Original Case. In the Original Case, Plaintiff sued her corporate employer Detroit Sport Foot.[1] The corporation initially participated in the **[*2]** litigation, but stopped after Plaintiff's action survived a motion for summary judgment. ECF 14-23, PgID 340. The Court then entered default judgment against Detroit Sport Foot and awarded Plaintiff $105,512.50. ECF 19-7, PgID 640. Plaintiff was unable to collect on the judgment, so she filed a separate cause of action to pierce the corporate veil. The Court ultimately granted Plaintiff's motion for summary judgment, and found that she could collect personally against Detroit Sport Foot's owner: Defendant Edwan Khrawesh. ECF 18. The legal significance of piercing the corporate veil is that an individual is made personally liable for a corporation's liabilities. *Piercing the Corporate Veil*, Black's Law Dictionary (10th ed. 2014); *see also Ryan Racing, LLC v. Gentilozzi, 231 F. Supp. 3d 269, 282 (W.D. Mich. 2017)*; *Gallagher v. Persha, 315 Mich. App. 647, 654, 891 N.W.2d 505 (2016)*; *Green v. Ziegelman, 310 Mich. App. 436, 465, 873 N.W.2d 794 (2015)*. So here, the Court found that Defendant is personally liable for Detroit Sport Foot's liability from the Original Case. ECF 18. Accordingly, it is appropriate to award the amount of the judgment as damages.

Defendant argues that the default judgment in the Original Case should have been less, ECF 19, but his arguments are misplaced. The proper time for Defendant

---

[1] Although the corporation did business under the name "The Athlete's Foot," it was incorporated under the name "Detroit Sport Foot" and located at 11214 E. Jefferson, Detroit, MI

48214. ECF 14-6. To avoid confusion with Defendant's other corporation doing business under the name "Athlete's Foot," the Court will refer to the corporation at issue here as "Detroit Sport Foot."

Thomas v. Khrawesh

to have limited his exposure was in the Original Case. He had ample opportunity to **[\*3]** fully litigate every issue, and as a result his corporation—and now Defendant personally—could have won the case or incurred less damages. Instead, Defendant decided to abandon the litigation and strip the corporation of assets. And those decisions had consequences: the Court entered default judgment against Detroit Sport Foot and has allowed Plaintiff to pierce the corporate veil.

## II. Prejudgment Interest

The Court finds that Plaintiff is entitled to her entire request for prejudgment interest. The question of whether Plaintiff is entitled to prejudgment interest is governed by Michigan law. *Perceptron, Inc. v. Sensor Adaptive Machs., Inc., 221 F.3d 913, 922 (6th Cir. 2000)*. Michigan law provides that "[i]nterest is allowed on a money judgment recovered in a civil action." *Mich. Comp. Laws § 600.6013(1)*. Plaintiff argues that the interest is mandatory, ECF 20, PgID 667, but it is unclear whether she is correct. Certain subsections of the statute use mandatory language, *see, e.g. Mich. Comp. Laws §§ 600.6013(3)* and *(4)*, and Michigan courts have interpreted the mandatory language as compelling prejudgment interest, *see, e.g., Everett v. Nickola, 234 Mich. App. 632, 639, 599 N.W.2d 732 (1999)*. Here, however, Plaintiff seeks to recover under *§ 600.6013(8)*. ECF 20, PgID 667. That subsection does not use mandatory language. Nonetheless, the Court finds that interest is appropriate because Defendant's actions unduly delayed **[\*4]** Plaintiff's recovery. *See Everett, 234 Mich. App. at 639* (holding that *§ 600.6013* should be liberally construed in favor of plaintiffs). Because Plaintiff provided her calculation of the interest, ECF 20-4, represented that it complies with the strictures of *§ 600.6013(8)*, ECF 20, PgID 667-68, and Defendant has not argued against the calculation, the Court finds that Plaintiff is entitled to the amount of the entire request.

## III. Costs for the Present Action

The Court finds that Plaintiff is entitled to $400 in costs. Civil *Rule 54(d)(1)* generally provides that costs should be allowed to the prevailing party. *Fed R. Civ. P. 54(d)(1)*. Costs, however, are not synonymous with expenses. 10 Wright & Miller, Fed. Prac. & Proc. Civ. § 2666 (3d ed.). Rather, the Court looks to the definition of "taxable costs" provided in *28 U.S.C. § 1920*. *See Goostree v. Tennessee, 796 F.2d 854, 863 (6th Cir. 1986)*. Plaintiff submitted a list of requested costs, ECF 20-6, and the Court finds that only the $400 filing fee is recoverable. The remaining requests either do not satisfy the

requirements of *§ 1920* or have transaction dates prior to the filing of the case; that fact suggests the costs were more likely incurred in relation to the Original Case.

## IV. Attorney's Fees for the Present Action

The Court finds that Plaintiff is not entitled to attorney's fees. Courts generally do not **[\*5]** award attorney's fees absent explicit statutory authority. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 602, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001)* (citing *Key Tronic Corp. v. United States, 511 U.S. 809, 819, 114 S. Ct. 1960, 128 L. Ed. 2d 797 (1994))*. In her argument for attorney's fees, Plaintiff does not cite any statutory authority. ECF 20, PgID 669-70. She instead cites case law for the proposition that attorney's fees are appropriate for "post-judgment collection efforts." *Id.* Plaintiff's argument is unpersuasive for two reasons. First, it relies on cases from outside the Sixth Circuit. Second, the cited cases pertain to post-judgment efforts as part of a cause of action with statutorily authorized attorney's fees. *See, e.g., Free v. Briody, 793 F.2d 807, 808-09 (7th Cir. 1986)*; *Balark v. Curtin, 655 F.2d 798, 802-03 (7th Cir. 1981)*; *Shaw v. AAA Eng'g & Drafting, Inc., 213 F.3d 538, 544-45 (10th Cir. 2000)*. Here, Plaintiff brought a separate cause of action to pierce the corporate veil. And consequently, attorney's fees are not statutorily authorized because the action is not brought under Title VII or *Michigan's Elliott-Larsen Civil Rights Acts*. *See 42 U.S.C. § 2000e-5(k)*; *Mich. Comp. Laws § 37.2802*. The Court therefore finds that an award of attorney's fees is inappropriate.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Plaintiff is awarded $126,446.63 in damages ($105,512.50 for the judgment in the Original Case, $20,534.13 in prejudgment interest, and $400 in costs).

This is a final order that closes the case.

**SO ORDERED**.

/s/ Stephen J. Murphy, III

STEPHEN J. MURPHY, III

United States **[\*6]** District Judge

Dated: November 16, 2017

Thomas v. Khrawesh

**End of Document**