UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARTFORD UNDERWRITERS                     Case No. 21-cv-11599
INSURANCE COMPANY;                        Hon. Nancy G. Edmunds
TWIN CITY FIRE INSURANCE COMPANY;
HARTFORD FIRE INSURANCE COMPANY;
PROPERTY AND CASUALTY INSURANCE
COMPANY OF HARTFORD;
TRUMBULL INSURANCE COMPANY; and
HARTFORD CASUALTY INSURANCE COMPANY,

      Plaintiffs,

vs.

DAVID OTTO,

      Defendant.

_____/

**BRIEF IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ...................................................................................ii

CONCISE STATEMENT OF THE ISSUES PRESENTED .....................................iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT.................................................................................................................. v

  I.   INTRODUCTION ..................................................................................... 1

  II.  BACKGROUND ....................................................................................... 2

  III.  STANDARD OF REVIEW........................................................................ 3

  IV.  ARGUMENT ............................................................................................. 3

    A.  Counter-Statement Of Governing Law .................................................. 3

    B.  The Magistrate Judge's *Obiter Dictum* ................................................5

    C.  The Hartford Does Not Have Evidence To Prove The Elements Of A Piercing Claim............................................................................................ 9

      1.  The Hartford Cannot Prove Omega Was A Mere Instrumentality Of Otto.............................................................................................................. 9

      2.  The Hartford Cannot Show That Otto Used Omega To Commit A Fraud Or Wrong. ....................................................................................... 14

      3.  The Hartford Cannot Prove That It Suffered An Unjust Loss.............. 17

  V.  CONCLUSION........................................................................................ 19

# INDEX OF AUTHORITIES

## Cases

*ACLU v. McCreary County, Ky.,* 607 F.3d 439 (6th Cir. 2010) ...................................... 6

*EPLET, LLC v. DTE Pontiac N., LLC*, 984 F.3d 493 (6th Cir. 2021) ................. 12, 15

Foodland Distribs. v. Al-Naimi, 220 Mich. App. 453; 559 N.W.2d 379 (1996) . iv, 4

*Gallagher v. Persha*, 315 Mich. App. 647, 891 N.W.2d 505 (2016) .......................... 3

*Glenn v. TPI Petroleum, Inc.*, 305 Mich. App. 698, 854 N.W.2d 509, 520 (2014) 4

*Gottlieb v. Arrow Door Co.*, 364 Mich. 450, 110 N.W.2d 767 (1961) ...................... 5

*Green v. Ziegelman*, 310 Mich. App. 436; 873 N.W.2d 794 (2015) ......... iv, 4, 5, 15

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Aguirre*, 410 F.3d 297, 303 (6th Cir. 2005) .................................................................. 13

*Laborers' Pension Tr. Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, (6th Cir. 1988) ............................................................................................................... 4

*Lim v. Miller Parking Co.*, 560 B.R. 688 (E.D. Mich. 2016) .................................... 5, 18

*Metro. Hosp. v. United States HHS*, 712 F.3d 248 (6th Cir. 2013) ............................ 6

*N.L.R.B. v. Fullerton Transfer & Storage Ltd., Inc.*, 910 F.2d 331 (6th Cir. 1990) .................................................................................................................................. 13

*PDV Midwest Refining, LLC v. Armada Oil and Gas Co.*, 305 F.3d 498, 510 (6th Cir. 2002) .................................................................................................................. 6

*Schwab v. Crosby*, 451 F.3d 1308 (11th Cir. 2006) ........................................................ 6

*Seasword v. Hilti, Inc (After Remand),* 449 Mich. 542; 537 N.W.2d 221 (1995) . 3

**Rules**

Fed. R. Civ. P. 56(c)(1)......................................................................................................... 9

**CONCISE STATEMENT OF THE ISSUES PRESENTED**

I.     Whether Plaintiffs have sufficient proof to invoke the extraordinary

remedy of piercing the corporate veil?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

1.  *Foodland Distribs. v. Al-Naimi*, 220 Mich. App. 453, 457; 559 N.W.2d 379 (1996)

2.  *Green v. Ziegelman*, 310 Mich. App. 436, 458; 873 N.W.2d 794 (2015)

## I.    INTRODUCTION

This is a post-judgment action to pierce the corporate veil.  Plaintiffs (collectively, "The Hartford") have a judgment for $1.4-million against non-party Omega Resource Solutions, LLC ("Omega") for breach of contract.  But The Hartford cannot collect that judgment because Omega has gone out of business. In fact, Omega went out of business *because* The Hartford retroactively changed its governing class code and increased Omega's insurance premium which nearly tripled it.   Omega was unable to charge its clients to recoup the retroactive fee increase, so it had to close its doors and it went out of business. The Hartford, upset that its poor underwriting procedures of retroactive fee increases left it holding the bag when Omega went out of business, is attempting to pierce the corporate veil and have Omega's liability imposed on its owner David Otto ("Otto").

The Hartford's claims here, however, lack the substantial evidence necessary to impose the drastic – and sparingly used – remedy of piercing the corporate veil to make Otto liable for Omega's judgment.  The facts here are clear that for years Omega was maintained as a separate legal entity that had its own employees, maintained its own books and records, filed its own tax returns, generated its own revenue, and paid its own bills – including paying The Hartford millions of dollars in insurance premiums on a timely basis over

1

three years.  There is simply no evidence to show that Otto operated Omega as a corporate shell to defraud creditors.  In fact, Omega was a separate company for years before Otto even purchased it.  Furthermore, what The Hartford asserts are transactions evidencing an intent to enrich Otto at the expense of creditors, are actually legitimate transactions between Omega and two other companies that performed services for it (consistent with a pattern and practice of paying for those services for several years).

In sum, The Hartford simply does not have the evidence to support a claim to pierce the corporate veil and to mount the attack necessary to overcome the long-standing, bedrock principal of corporate limited liability - that a company's owners are not individually liable for the company's debt.  For these reasons, this Court should deny The Hartford's motion for summary disposition and instead grant Otto's competing motion for summary disposition.

## II.   BACKGROUND

Otto filed his own motion for summary judgment on the same date as The Hartford filed this motion.  *See* (ECF No. 18).  Otto relies on the same facts and exhibits he used to support his motion for summary judgment, to oppose The Hartford's motion for summary judgment.  Otto incorporates that statement of facts, and the accompanying exhibits (ECF No. 18 at Page ID 1634-43

2

(statement of facts) and Page ID 1654-92 (exhibits)).  In the interests of judicial economy, the statement of facts and copies of the same exhibits are not reproduced in this response.

### III.   STANDARD OF REVIEW

Otto does not contest The Hartford's standard of review.

### IV.   ARGUMENT

#### A.   Counter-Statement Of Governing Law

Michigan law respects the corporate form, and Michigan courts will usually recognize and enforce separate corporate entities.  *See, e.g., Seasword v. Hilti*, *Inc (After Remand)*, 449 Mich. 542, 547-548; 537 N.W.2d 221 (1995) ("It is a well-recognized principle that separate corporate entities will be respected.").   However, "when the requisite evidence establishes that the corporate form has been abused, the corporate form will be pierced so that creditors (and sometimes others) can seek payment of a corporate debt (like the judgment in this case) from a responsible corporate shareholder." *Gallagher v. Persha*, 315 Mich. App. 647, 653-54, 891 N.W.2d 505 (2016). "Piercing the veil of a corporate entity is an equitable remedy sparingly invoked to cure certain injustices that would otherwise go unredressed in situations "where the corporate entity has been used to avoid legal obligations . . . ." *Gallagher, supra*.

3

In  order to pierce the corporate veil: "first, the corporate entity must be a mere instrumentality of another entity or individual. Second, the corporate entity must be used to commit a fraud or wrong. Third, there must have been an unjust loss or injury to the plaintiff." *Foodland Distribs. v. Al-Naimi*, 220 Mich. App. 453, 457; 559 N.W.2d 379 (1996).

Regarding the "mere instrumentality" element the "court must determine whether the evidence establishes that the owner operated the entity as his or her alter ego—that is, as a sham or mere agent or instrumentality of his or her will." *Green v. Ziegelman*, 310 Mich. App. 436, 458; 873 N.W.2d 794 (2015).  A variety of factors are commonly examined to determine the above prongs, including: "(1) whether the [LLC] is undercapitalized, (2) whether separate books are kept, (3) whether there are separate finances for the [LLC], (4) whether the [LLC] is used for fraud or illegality, (5) whether corporate formalities have been followed, and (6) whether the [LLC] is a sham." *Glenn v. TPI Petroleum, Inc.*, 305 Mich. App. 698, 854 N.W.2d 509, 520 (2014) (citing *Laborers' Pension Tr. Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 704-05 (6th Cir. 1988)).

Regarding the element "that the corporate entity must be used to commit a fraud or wrong. . . .  fraud must be established by clear and convincing

4

evidence and must never be presumed." *Foodland Distribs.* at 457; *see also,*
*Gottlieb v. Arrow Door Co.*, 364 Mich. 450, 452, 110 N.W.2d 767 (1961) (noting
that there were no "proofs of fraud, sham, or other improper use of the
corporate form" to justify disregarding the separate existence of the entity at
issue). In evaluating this element, the Court "must determine whether the
manner of use of the entity operated as a 'mere instrumentality' effected a fraud
or wrong on the complainant." *Green, supra*. at 458 (cleaned up). "In order to
prove the 'fraud or wrong' element, the plaintiff must establish that a
controlling entity engaged in deliberate wrongful conduct that either was
designed to or actually did produce injury to obligees of the instrumental
entity." *Lim v. Miller Parking Co.*, 560 B.R. 688, 705 (E.D. Mich. 2016)

Finally, the party seeking to pierce the corporate veil must separately
prove that is suffered an "unjust loss" that was caused by the "fraud or wrong"
element. *Lim, supra*. Indeed, a plaintiff must prove "something other than a
mere showing of an unjust loss to the plaintiff" to support a piercing claim. *Id.*

### B.   The Magistrate Judge's *Obiter Dictum*

The Hartford's primary argument is that Magistrate Judge's May 21, 2021
Report and Recommendation in *Hartford Underwriters Ins. Co. v. Omega
Resource Solutions, LLC*, Case No. 2:18-cv-12907 (the "Underlying Case") was
correct and this Court should conduct the same analysis and reach the same

conclusion in this case.  But that argument places all of its reliance on what was

*obiter dictum* in the Report and Recommendation in the Underlying Case.  As

Judge McKeague explained:

> A "holding" is a court's "determination of a matter of law pivotal to
> its decision; a principle drawn from such a decision." Black's Law
> Dictionary (9th ed. 2009). The holding of a decision, which has
> precedential effect, is to be contrasted with "obiter dictum," which
> does not have precedential effect. "Obiter dictum," "something said
> in passing" in Latin, is a "judicial comment while delivering a
> judicial opinion, but one that is unnecessary to the decision before
> the court and therefore not precedential." *Id*. "Judicial dictum,"
> however, is an "opinion by a court on a question that is directly
> involved, briefed, and argued by counsel, and even passed on by the
> court, but that is not essential to the decision." *Id*. Judicial dictum,
> sometimes referred to as "considered dictum," albeit not
> necessarily binding, is entitled to considerable weight. *See ACLU v.
> McCreary County, Ky.,* 607 F.3d 439, 448 (6th Cir. 2010)
> (recognizing that appellate courts consider themselves bound by
> Supreme Court's considered *dicta* almost as firmly as by its
> holdings); *PDV Midwest Refining, LLC v. Armada Oil and Gas Co.*, 305
> F.3d 498, 510 (6th Cir. 2002) (lengthy discussion, though arguably
> *dictum*, followed as well-reasoned and persuasive); *Schwab v.
> Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006)  (collecting cases
> recognizing that considered dictum is not to be taken lightly).

*Metro. Hosp. v. United States HHS*, 712 F.3d 248, 274 (6th Cir. 2013)(McKeague,

J., dissenting)

Here, when The Hartford filed its motion for post-judgment discovery,

execution of judgment, and to pierce the corporate veil under Rule 69, Otto's

primary defense to the motion was that it was procedurally improper.

(Underlying Case ECF No 32; Page ID Nos. 430-32).  Otto spent comparatively

little effort and time to argue the merits of whether the corporate veil should be pierced because the motion was procedurally improper.  (*Id*. at Page ID Nos. 432-35).   Nonetheless, despite the fact that the issue was not fully briefed before it, and not necessary to its decision, and in fact, was inconsistent with its ultimate decision, the Magistrate Judge engaged in an extended discussion about the merits of the veil piercing claim. (Underlying Case ECF No 43; Page ID Nos. 612-14).

This was *obiter dictum.*  Specifically, the Magistrate Judge did not find that the corporate veil should be pierced.  (Underlying Case ECF No. 43).  In fact, the Magistrate Judge found the opposite – that the motion to pierce the corporate veil should be denied.  (*Id*.).  The holding of the case was not that this Court should pierce the corporate veil.  (*Id*.).  Likewise, this was not judicial *dictum*. The question of whether the corporate veil should be pierced was not "essential to the decision" because, again, the decision was not to pierce the corporate veil because it was procedurally improper.  (*Id*.).  Instead, the discussion of piercing the corporate veil was *obiter dictum*-- a comment that was "unnecessary to the decision"  of the court.  *Metro Hosp., supra*.

Further, it would be fundamentally unfair to Otto that he was not able to present a full and complete argument on the piercing the corporate veil claim in the motion in the Underlying Case.  Specifically, Otto (correctly) focused his

brief arguing that the motion to pierce was improper.  (Underlying Case ECF No 32; Page ID Nos. 430-32).  Thus, Otto did not have a full and fair opportunity to present a focused argument on whether the veil should be pierced in the Underlying Case.  Here, in both his own motion and this response, Otto has had an opportunity to marshal the facts in support of his legal argument that The Hartford cannot meet their burden of proving that this Court should pierce the corporate veil.  So, in deciding this motion (and Otto's competing motion for summary judgment) this Court is not bound by the Magistrate Judge's previous opinion and that previous opinion holds no persuasive value in deciding this motion (and Otto's competing motion for summary judgment).  The Magistrate Judge's Report and Recommendation in the Underlying Case was based on an incomplete record and incomplete arguments that did not consider the substantial defenses that Otto has to the veil piercing claim.  (Underlying Case ECF No 32; Page ID Nos. 430-32).  This Court should ignore the Magistrate Judge's Report and Recommendation.

Further, instead of presenting evidence in support of their piercing claim, Plaintiffs largely regurgitate the *obiter dictum* from the Report and Recommendation and argues that the Magistrate Judge "reached the right result." But the Magistrate Judge's Report and Recommendation is not evidence that may be used to establish the absence of a material fact. *Cf.* Fed. R. Civ. P.

56(c)(1).  A party must present admissible evidence showing that the there is no genuine issue of material fact and the party is entitled to judgment as a matter of law.  *Id.* at R. 56(a).  The Hartford has failed to do that here, and simply relying on the Report and Recommendation from the Underlying Case is not sufficient to meet The Hartford's burden under Rule 56.

### C. The Hartford Does Not Have Evidence To Prove The Elements Of A Piercing Claim

Taking at face value The Hartford's adoption of the Report and Recommendation's *obiter dictum*, The Hartford still fails to establish the elements of a claim for piercing the corporate veil.  In fact, The Hartford fails to present sufficient evidence to establish any of the three requisite elements for piercing.

### 1. The Hartford Cannot Prove Omega Was A Mere Instrumentality Of Otto.

The Hartford argues that they can prove the mere instrumentality element because Omega collected money from its clients to pay workers compensation premiums, but instead didn't pay The Hartford for those premiums because Otto wouldn't allow it.  In support of their argument, The

Hartford relies on one snippet of testimony from Michael Zybura's deposition.[1] But Plaintiffs (and the Magistrate Judge) omit much of the relevant background for how Omega operated relative to The Hartford and instead place an inordinate focus on that deposition snippet. In fact, it was not the case, as The Hartford would lead this Court to believe, that Omega was a "mere conduit" collecting premiums from its clients that it was required to pass along to The Hartford. That is, Omega was not some collection agent for The Hartford.

Rather, The Hartford had a contract with Omega to provide workers compensation insurance for Omega's employees. (ECF No. 18, Page ID 1669 at ¶18). The Hartford had no contract with Omega's clients. (*Id*.). The way that The Hartford billed Omega was to estimate a year's premiums and bill Omega based on that estimate, then conduct an audit later to make adjustments. (*Id.* at Page ID 1670, ¶19).

Omega, for its part, charged its customers for a number of services, which included, but was not limited to, a slate of human resources services (i.e., payroll, tax management, recruiting, risk management, benefits planning and administration, governmental compliance, legal (labor law issues), HR

---

[1] Zybura, who prepared balance sheets for Omega and was familiar with its finances, said that some money collected by Omega from its client for workers compensation premiums was not paid to the carriers.

10

consulting; and client-employee relations (addressing employee concerns on behalf of Omega) (collectively, the "HR Services"). (*Id.* at Page ID 1668-69, ¶16). Omega also provided its clients with workers compensation insurance that covered Omega's employees (who provided services to those Omega clients), which it purchased from The Hartford. (*Id.*). For things like the HR Services or workers compensation insurance, Omega did not provide these services directly, rather it contracted for these services with outside vendors. (*Id.* at Page ID 1669, ¶17). For example, it contracted with America's HR Department (f/k/a America's Back Office; and f/k/a AES Management Company) ("ABO") and AES Human Capital Resources, Inc (f/k/a AES Management) ("AES") to provide the HR Services. (*Id.*). Similarly, it contracted with The Hartford to provide the workers compensation insurance. (*Id.* at ¶18).

Thus, it was not the case, as The Hartford argues by reference to the snippet of Zybura's deposition testimony, that Omega was just collecting fees from its clients and turning them over to The Hartford. (*Id.* at Page ID 1669-70, ¶¶18-19). It is also not true that Omega simply collected all of the workers compensation insurance premiums from its client and pocketed them all for itself. (*Id.* at Page ID 1670, ¶19). To the contrary, Omega paid the Hartford millions of dollars in insurance premiums without incident for several years (including several years before Otto purchased the company). (*Id.*).

11

Likewise, the fact that Otto ordered Omega to pay ABO and AES for the HR Services is not proof that Omega was a mere instrumentality of Otto.  Of course Otto was the person to order the payments – he was the owner of Omega.  (*Id*. at Page ID 1666-67, ¶6).  It is not the case that payments from one company wholly owned by an individual to another company wholly owned by the same individual are proof that the companies are "mere instrumentalities" of the owner.  *EPLET, LLC v. DTE Pontiac N., LLC*, 984 F.3d 493, 502 (6th Cir. 2021).  In fact, if that were the case, virtually all transactions between wholly owned companies or parent-subsidiary companies would expose the common owner to individual liability and destroy the protection of corporate separateness.  This is not the law.  *Id*.

Where the relationship between Omega and The Hartford broke down was when The Hartford increased Omega's workers' compensation premiums by $1.4-million – nearly tripling them *retroactively*.  (ECF No. 18 at Page ID 1670, ¶20).  It is no surprise that when The Hartford sent Omega a bill for an additional $1.4-million on insurance premiums Omega had already collected from its client, Omega could not simply pay the massive increase to The Hartford.  (*Id*. at Page ID 1670-71, ¶21).

But this is not evidence, or a function, of undercapitalization.  "The mere fact that [a] company ceased operation without being able to pay all of its debts

12

is . . . not the sort of injustice contemplated" by the application of alter ego liability. *N.L.R.B. v. Fullerton Transfer & Storage Ltd., Inc.*, 910 F.2d 331, 341 (6th Cir. 1990); *see also Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Aguirre*, 410 F.3d 297, 303 (6th Cir. 2005)("[A]lthough plaintiffs certainly have a right to be upset about the company's failure, their plight does not constitute the type of injustice that warrants veil piercing."). Nothing in Michigan law requires a member to keep a company capitalized and operating in order to meet the company's contingent lawsuit liabilities.  Omega was adequately capitalized to meet its expenses in the ordinary course of business: it paid its employees and paid its creditors timely, with the exception of this massive, retroactive increase that The Hartford imposed.

In addition to the inability of The Hartford to demonstrate a fraudulent use of Omega, the evidence showing the separateness of Omega, Otto, ABO, and AES is undisputed.  Specifically, the evidence shows that:

> ➢ Omega, Otto, ABO, and AES all had separate bank accounts.

> ➢ Omega, Otto, ABO, and AES all filed separate tax returns.

> ➢ Omega, Otto, ABO, and AES each segregated their expenses, such that Otto, and his companies separately paid and accounted for the services they used.

13

➢ Omega, ABO, and AES were separate corporate entities, with separate registrations that were created at separate times and at different times owned by different individuals.

➢ Omega, ABO, and AES were in different segments of business.

➢ Omega, ABO, and AES had different assets and different liabilities.

➢ Omega, ABO, and AES had different tax identification numbers.

➢ ABO and AES were not solely funded by Omega; ABO and AES also generated substantial revenue from clients other than Omega;

➢ Omega paid its own employees from a source of revenue (i.e., its client) that was separate from ABO, AES, and Otto; the inverse is true as well; while some of ABO and AES's revenue came from Omega; the majority of its revenue came from other clients. And

➢ Neither Otto, ABO, nor AES guaranteed any of Omega's debt.

(ECF No. 18 at Page ID 1666-68, ¶¶2-14). The Hartford has no evidence to support the existence of any of the factors for demonstrating that a company was a "mere instrumentality" of its owner.

### 2.   The Hartford Cannot Show That Otto Used Omega To Commit A Fraud Or Wrong.

The Hartford argues that the second element required to pierce the corporate veil– that the entity was used to commit a fraud or wrong – is

satisfied because Omega breached its contract with The Hartford.  While it is true that Michigan recognizes that an abuse of the corporate form that causes a breach of contract can be proof that the company was used to commit a fraud or wrong, not every breach by a company satisfies this element and allows a piercing claim to proceed.  *EPLET, supra*. at 502.  As the Sixth Circuit explained, applying Michigan law in determining whether a complaint survived 12(b)(6) analysis, "[t]he corporate veil cannot necessarily be pierced if the parent exercises any control over a subsidiary. Rather, the subsidiary must have been reduced to a sham or mere agent or instrumentality of [the parent's] will that the parent used to wrong the complainant. *Id*. (citing *Green*, 873 N.W.2d at 807)(internal quotation marks omitted).

Here, the only evidence The Hartford cites to in support of their argument is their assertion that Omega breached the contract and Otto directed Omega. But this is just an allegation that Otto directed the activities of Omega, which, of course, he did.  Otto was the only member of Omega.  (ECF No. 18 at Page ID 1666-67, ¶6).  This is the exercise of "any control" over the company that the Sixth Circuit and the Michigan Court of Appeals has said is insufficient to establish this second element.  *See EPLET, supra*; *Green, supra* at 807.

15

What is fatal to The Hartford's motion (and its case as a whole ) is that it has no facts showing that Omega was **a mere instrumentality** used to work a fraud over on The Harford.  Specifically:

➢ There are no facts suggesting that Omega was a shell company set up with no real revenues and only expenses.

➢ There are no facts suggesting that Otto took all of the revenues paid to Omega and simply paid them to himself;

➢ There are no facts suggesting that monies that were owed to Omega were instead paid to Otto.

➢ There are no facts suggesting Otto commingled his personal funds with Omega or had Omega pay for his personal expenses.

➢ There is no evidence that Omega was performing work for the benefit of Otto, ABO, AES or any other company owned by Otto, *gratis.*

➢ There are no facts suggesting that The Hartford did not know the legitimate and fundamental business of Omega:

   o that Omega was a merchandising company;

   o that it had thousands of workers; and

   o that Omega paid wages and benefits for these workers.

What The Hartford pins its hopes to in order to pierce the corporate veil is the claim that Omega paid money to ABO and AES and then ABO and AES distributed this money to Otto.  While this allegation is factually true, a substantial examination of the claim reveals that there is nothing fraudulent about this transaction.

Specifically, the facts in this case show that Omega paid ABO and AES for the HR Services that ABO and AES provided for it.  (ECF No. 18 at Page ID 1669, ¶17).  The payments from Omega to ABO and AES were not made on a consistent-rate basis, but were made on a regular basis when Omega would transfer funds from its account – after its other bills were paid – to the ABO or AES account.  (*Id*.).  Omega did not otherwise pay ABO or AES.  (*Id*.). The facts in this case are undisputed that ABO and AES performed services for Omega including, but not limited to, the HR Services.  (*Id*.).  Thus, it is not the case, as The Hartford suggests, that money was simply swept from Omega to ABO or AES and then to Otto as a distribution.  The money that went from Omega to ABO and AES was to pay for the HR Services that ABO and AES provided to Omega.  (*Id*.).

> ### 3.   The Hartford Cannot Prove That It Suffered An Unjust Loss.

Finally, The Hartford provides no evidence that it has suffered an "unjust loss" as a result of any of Otto's actions.  In particular, the only argument The Hartford makes that its loss is unjust is that because it is a creditor of Omega, and Omega paid other paid creditors first (i.e., ABO and AES) The Hartford's loss is somehow unjust.

But this Court rejected that very same argument in *Lim*, where the judgment creditors of the defendant Miller-Detroit claimed that they suffered an unjust loss because they went to collect on their judgment against Miller-Detroit and it could not pay them.  So, the judgment creditors sought to pierce the corporate veil and hold the related company (Miller-Chicago) liable for Miller-Detroit's judgment debt.  The judgment creditors claimed that they had suffered an unjust loss because Miller-Detroit had made payments to Miller-Chicago that were re-payments of loans that were used by Miller-Detroit to allow its member (Bruce Miller) to take "heavy draws" from Miller-Detroit, instead of paying the judgment creditors.  This Court held that the evidence was not sufficient to prove an unjust loss for purposes of piercing the corporate veil because there was no evidence that the companies themselves were not separate and the mere inter-company nature of the transactions did not mean that other creditors suffered an "unjust loss".

18

Here, The Hartford has no proof that it suffered an "unjust loss" because of anything Otto did.  While the Hartford suffered a loss, that loss was attributable to its own risky business practices of charging premiums based on estimates and then seeking to adjust those premiums after-the-fact.  The primary risk with that business model is that when you triple the premiums, there is a risk your client cannot pay.  That is what happened here.  The Hartford's loss is simply an ordinary business loss and not an "unjust loss" that should permit the extraordinary remedy of piercing the corporate veil.

## V.   CONCLUSION

For the foregoing reasons, Defendant requests that this Court: (1) deny this motion; instead (2) grant the Defendants' competing motion for summary judgment for the reasons stated in that motion; (3) dismiss Plaintiffs' complaint with prejudice; and (4) grant any other relief that this Court deems appropriate, just, and equitable.

Dated: July 27, 2022                    Respectfully submitted:

**ATLIOR LAW, P.C.**

/s/ Kenneth F. Neuman
Kenneth F. Neuman (P39429)
Attorney for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 27, 2022, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record on the ECF Service List.

<u>s/ Kenneth F. Neuman</u>
Kenneth F. Neuman (P39429)
ALTIOR LAW, P.C.
