UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARTFORD UNDERWRITERS
INSURANCE COMPANY, TWIN
CITY FIRE INSURANCE COMPANY,
HARTFORD FIRE INSURANCE
COMPANY, PROPERTY AND
CASUALTY INSURANCE
COMPANY OF HARTFORD,
TRUMBULL INSURANCE COMPANY and
HARTFORD CASULATY INSURANCE
COMPANY,

    Plaintiffs,
v.

David Otto,

    Defendant.
_____/

Case No. 21-11599

Honorable Nancy G. Edmunds

Magistrate Judge Kimberly G. Altman

**OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT [16] [18]**

This case stems from a previous civil action before this Court between Plaintiffs and Omega Resources Solutions, LLC, a limited liability company owned solely by Defendant David Otto (the "Initial Lawsuit"). (E.D. Mich. Case #:18-cv-12907.) In the Initial Lawsuit, Plaintiffs alleged that Omega breached a workers compensation insurance policy issued by Plaintiffs and owed an additional $1,374,967 in additional insurance premiums. Omega's attorney withdrew from the case while the Initial Lawsuit was pending because Omega had gone out of business and was no longer able to pay his fees. Omega failed to secure alternate representation and Plaintiffs filed a motion to strike Omega's answer and for default judgment. Plaintiffs' motion was granted after Omega failed to

1

appear at the hearing on the motion. Following entry of default judgment, Plaintiffs sought to pierce the corporate veil of Omega and hold its owner, Defendant David Otto, personally liable for the money judgment. The motion was referred to the Magistrate Judge who approved of piercing the corporate veil, but nonetheless recommended that the motion be denied on procedural grounds, because Otto was not a defendant in the Initial Lawsuit.

Following this Court's acceptance of the Magistrate Judge's report and recommendation, Plaintiffs initiated the present lawsuit against Otto seeking to hold him personally liable for the judgment in the Initial Lawsuit. Before the Court are the parties' cross motions for summary judgment. (ECF Nos. 16, 18.) Both motions are fully briefed. (ECF Nos. 20-23.) Because the Court finds its decision process would not be significantly aided by oral argument, it declines to hold a hearing. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow the Court GRANTS Plaintiffs' Motion for Summary Judgement (ECF No. 16) and DENIES Otto's Motion for Summary Judgment. (ECF No. 18.)

**I.      Background**

    **A.      Plaintiffs and Omega**

Defendant David Otto owns or has owned more than a dozen, or perhaps even more than 100 different entities.[1] One of those entities, Omega Resources Solutions, LLC

---

[1] The number of entities Otto operates is unknown—according to Plaintiffs, a search turned up 134 entities affiliated with Otto, but Otto testified he was affiliated with a maximum of 16 entities. (ECF No. 16-12, PageID.820.) Zybura believes 16 is a low estimate. (ECF No. 16-13, PageID.916.) Sabatella estimated that Otto is involved in a "large number" of businesses. (ECF No. 16-14, PageID.1013.)

2

("Omega"), was purchased by Otto through his son, Anthony Sabatella, in 2014.[2] (ECF No. 18-2, PageID.1657.) Until it ceased operating in 2018, Omega was in the business of providing merchandising and product demonstration services for clients at various third-party stores and retail locations nationwide. (ECF Nos. 8, 9.) Omega supplied all its clients' employees and labor for these services. (*Id.*)

Part of Omega's operation included passing on certain employee costs to its clients, including the cost of premiums for workers' compensation insurance for the employees it supplied. (*Id.*, ECF No. 16-13, PageID.956-58, 983-84.) At Omega's request, Plaintiffs had issued Workers Compensation Insurance Policy No. 42 WE CP3934 (the "Policy") which provided Omega with workers' compensation insurance coverage for its employees on a nationwide basis from January 1, 2015 until January 1, 2017. (ECF Nos. 8, 9.) Pursuant to the Policy, Omega agreed to pay certain premiums to Plaintiffs which were subject to annual audits. (*Id.*) The audit results for the 2015-16 and 2016-17 Policy periods showed that Omega owed Plaintiffs $1,374,967 in additional premiums for the insurance coverage provided by the Policy.[3] (*Id.*) Plaintiffs billed Omega for this amount. (*Id.*)

---

[2] Otto requested that Sabatella purchase Omega on behalf of another Otto entity, and Sabatella did so on January 1, 2014. (ECF No. 16-14, PageID.1022). Sabatella was a member of Omega in 2014 and 2015, yet he did not earn any money from his ownership. (*Id.* at PageID.1033). Money that Omega earned was spent on management fees paid to another Otto company. (*Id.* at PageID.1034). On January 10, 2018, Otto purchased Omega from Sabatella in order "to consolidate everything under [him]." (ECF No. 16-12, PageID.822). At that point, Otto became Omega's sole member.

[3] Plaintiffs point to several reasons why the audit results showed that Omega had underpaid them including a significant increase in Omega's payroll from nine to 23 million dollars and Omega's alleged submission of improper employee code designations. (ECF No. 16, PageID.476.) Defendant denies that the audit results were substantively correct.

3

Omega did not remit payment to Plaintiffs. Instead, on December 1, 2017, Omega filed an administrative appeal seeking a review of Plaintiffs' assessment of the additional premiums. (*Id.*) On May 18, 2018, Omega's counsel filed a motion to withdraw on the grounds that Omega had gone out of business and could not pay his fees. (ECF No. 8-2.) The administrative law judge granted counsel's motion to withdraw and on July 27, 2018, Omega's administrative appeal was dismissed with prejudice for failure to prosecute. (*Id.*)

Plaintiffs filed the Initial Lawsuit alleging breach of contract shortly after the dismissal of the administrative appeal. On May 20, 2019, this Court entered a default judgment against Omega in the amount of $1,409,814, inclusive of interest. (ECF No. 8-4.) But Plaintiffs' efforts to collect the judgment were unsuccessful. Plaintiffs served writs for garnishment seeking payment of the Judgment from several banks Omega was thought to have done business with, but these writs were returned unexecuted as Omega either did not hold accounts at those banks or the accounts had been closed. (ECF Nos. 8, 9.) Otto states that according to Omega's records, Omega's bank accounts were closed on April 5, 2018. (ECF No. 18-7.) This was during the pendency of Omega's administrative appeal and one month before Omega's counsel withdrew on the grounds that Omega had gone out of business.

---

(ECF No. 9, PageID.441.) These arguments are irrelevant here as the Court has already entered judgment in favor of Plaintiffs in the Initial Lawsuit. (*See Initial Lawsuit*, E.D. Mich. Case No. 18-cv-12907, ECF No. 14.)

### B. Post-Judgment Discovery

After Plaintiffs were unable to collect the judgment directly from Omega's accounts, they conducted post-judgment discovery, including taking several depositions, to determine if they could collect the Judgment and from where. Plaintiffs first deposed Otto as Omega's sole member and CEO. (*See* ECF No. 16-12.) Although the banking information Plaintiffs received showed that Otto was the sole individual authorized to write checks from Omega, (*Id.* at PageID.838), Otto generally disclaimed knowledge of any specific financial transactions when he was questioned and instead deferred to Michael Zybura, the director of finance for another of Otto's entities, America's Back Office. (ECF No. 16-12, PageID.830, 839-42.)

At his deposition, Zybura testified that he is responsible for accounting, finance, taxes, and compliance for all of Otto's entities, including Omega. (ECF No. 16-13, PageID.913-14.) He stated he handles the money "exactly how it was done before [he] got there" and that he does what Otto tells him to do. (*Id.* at PageID.933.)

According to his testimony, Zybura is paid by AES Human Capital Resources Inc., another of Otto's companies, but he is also part of Otto's overall management company, America's HR Department Inc. (*Id.* at PageID.930.) At Otto's direction, Zybura manages all of Otto's companies on a "consolidated basis." (*Id.* at PageID.933, 953.) According to Zybura, this means that the intercompany accounts should balance, but from company to company, the balance sheets are not necessarily accurate. (*Id.* at PageID.933, 950, 953, 955, 960, 989-90.) According to Zybura, since Otto owns all the companies and the entire operation is run in a consolidated manner, there are no written contracts between each

5

individual entity and the management company. (*Id.* at PageID.932-33.) As the management company operates and incurs expenses, Zybura pulls money from each operating entity as he needs it, usually in $10,000 increments. (*Id.* at PageID.933.) Zybura testified that the amount of money taken for management fees from each entity is dependent upon the amount of money in each entity's operating account—if a certain entity has a large amount of money in its account, Zybura could take more money from that entity to cover the management fees of the entire Otto operation. (*Id.* at PageID.940.)

During his deposition, Zybura reviewed Omega's December 31, 2017 balance sheet and Omega's February/March 2018 profit and loss statement with counsel for Plaintiffs. (ECF No. 16-13, PageID.948.) Though Zybura prepared the balance sheet, he stated he did not trust those numbers to be accurate since he did the accounting for all Otto entities on a consolidated basis. (*Id.* at PageID.953, 989-90.) Regardless, a line item on Omega's balance sheet identified $460,956 as accrued workers' compensation insurance premiums. (*Id.* at PageID.956.) Zybura testified that this amount was collected from clients, but was kept in a general operating account and not remitted to the workers' compensation carriers. (*Id.* at 956-57.) He stated that the decision not to remit the premiums collected was made by Otto. (*Id.* at PageID.957.)

The profit and loss statement showed that Omega billed its clients $1,662,251 for workers compensation premiums, but that it only paid Plaintiffs $646,000. (*Id.* at PageID.983-84.) According to Zybura, the balance retained from the money collected was considered Omega's workers' compensation profit. He testified: "David Otto has a number in mind of how much gross profit he wants to make on an annual basis for each client

6

employee and he will price the business accordingly. It could be all admin (*sic*) fees. He could mark up the Workers' Comp (*sic*). There's work involved there. He could mark up the state unemployment. And those are typically [Otto's] three profit areas." (*Id.* at PageID.985.)

Before Omega completely wound down, but after Plaintiffs had billed the company for the additional premiums, Omega emptied its bank accounts by making payments to other Otto entities. (*Id.* at PageID.969-70.) Some money was transferred to America's Back Office, the company that would service Omega's former clients going forward (*Id.* at PageID.970), and $2.6 million dollars in management fees and $443,539 in administrative fees were paid to America's HR Department Inc., or other Otto companies. (*Id.* at PageID.938.) Though these payments went out to other Otto entities, there was no effort to collect any money owed to Omega from any of the other entities—Zybura averred that this would serve no purpose as it would essentially amount to Otto paying himself just to satisfy receivables. (*Id.* at PageID.960.)

    **C.    The Present Case**

Plaintiffs filed the present action on July 8, 2021 seeking a declaratory judgment that the Court may pierce Omega's corporate veil and hold Otto liable for the money judgment awarded in the Initial Case. Both Plaintiffs and Otto filed motions for summary judgment on July 6, 2022.

**II.    Legal Standard**

"Summary judgment is proper only if the moving party shows that the record does not reveal a 'genuine dispute as to any material fact and the movant is entitled to judgment

7

as a matter of law.'" *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

If the moving party meets its burden, the non-moving party must then make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bormuth v. Cty. of Jackson*, 870 F.3d 494, 503 (6th Cir. 2017). The non-moving party must present some evidence in support of its complaint to defeat a motion for summary judgment and show that a genuine issue for trial exists— *i.e.*, that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 248.

### III. Analysis

"Michigan law presumes that the corporate form will be respected." EPLET, LLC v. DTE Pontiac North, LLC, 984 F.3d 493, 499 (6th Cir. 2021). "This presumption, often referred to as a "corporate veil," may be pierced only where an otherwise separate corporate existence has been used to subvert justice or cause a result that is contrary to some overriding public policy." *Id.* (quoting *Seasword v. Hilti, Inc.*, 537 N.W.2d 221, 224 (1995)). "The propriety of piercing the corporate veil is highly dependent on the equities

of the situation, and the inquiry tends to be intensively fact-driven." *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 798 (6th Cir. 2007) (citing *Kline v. Kline,* 305 N.W.2d 297, 299 (1981)). "When considering whether to disregard the separate existence of an artificial entity, a court must first examine the totality of the evidence surrounding the owner's use of an artificial entity and, in particular, the manner in which the entity was employed in the matter at issue. *Green v. Ziegelman*, 873 N.W.2d 794, 807 (2015) (citing *Klager v. Robert Meyer Co.,* 329 N.W.2d 721 (1982)).

"Michigan courts will not pierce the corporate veil unless (1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss." EPLET, LLC, 984 F.3d at 499. "Regarding the second element . . . Michigan courts have held that a breach of contract can be the kind of wrong that justifies piercing a corporate veil if the corporate form has been abused." *Id.* "The rules regarding piercing a corporate veil are applicable in determining whether to pierce the corporate veil of a limited-liability company." *Florence Cement Co. v. Vettraino*, 807 N.W.2d 917, 922 (2011).

Here, there is no question that Omega breached its contract with Plaintiffs to pay the additional premiums or that Plaintiffs suffered an unjust loss as a result. (*See Initial Lawsuit*, E.D. Mich. Case No. 18-12907, ECF Nos. 13, 43.) As a result of Omega's breach of contract and failure to defend itself in the Initial Lawsuit, Plaintiffs were awarded damages in the amount of $1,409,814, (*Id.* at ECF No. 14), and that amount is still outstanding. Thus, elements two and three are satisfied. *See Servo Kinetics,* 475 F.3d at 799-800 (holding that a breach of contract constitutes a "fraud or wrong" and that losses

9

suffered as a result of that breach are sufficient to constitute an "unjust loss" for the purpose of veil-piercing liability).

Accordingly, the only issue here is whether Omega was a "mere instrumentality" of Otto. The Court finds that it was. Otto argues that Omega was a separate company with its own bank accounts, books and records, expenses, employees, and clients, among other things. (ECF No. 18, PageID.1648-49.) But undisputed testimony from Zybura indicates that the books and records for Omega could not be trusted as the Otto entities were run on a "consolidated basis" at Otto's direction. (*Id.* at PageID.933, 953, 989-90.)

Otto also overlooks undisputed evidence that he had sole control of Omega to operate it as he saw fit, moving various amounts of money between his entities for "management fees" at unscheduled times without any written contracts in place. (*See* ECF No. 16-13, PageID.932-33.) Though Otto asserts that Omega paid his other entities for their services at "market rates" and "after all creditors were paid," (ECF No. 18-3, PageID.1669), evidence shows this was not the case as Omega was winding down. (*See, e.g.*, ECF No. 16-13, PageID.938, 969-70; ECF No. 18-3, PageID.1670.) The record reflects that Otto was aware of Omega's obligation to Plaintiffs under the policy, but that he ignored this obligation and took action to make Omega uncollectable while choosing to pay millions of dollars in "management" and "administrative" fees to his other entities. (*See* ECF No. 16-13 at PageID.938.). In addition, notably absent from the record is any evidence showing what the market rates were for similar administrative or management

10

fees, and how that compared to the payments Omega made to Otto's other entities. Thus, Otto abused the corporate structure.

Based on the foregoing, the Court finds Plaintiffs met their burden in satisfying the final element necessary to pierce the veil of Omega. "[T]he equities of the situation" also support this result as it would be unjust to allow an individual to shutter the doors of his entity to avoid paying a single creditor while transferring the entity's clients and assets to another business owned by the same individual. *See Servo Kinetics, Inc.*, 475 F.3d at 798.

## IV.  Conclusion

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (ECF No. 16) is **GRANTED** and Defendant's Motion for Summary Judgment (ECF No. 18) is **DENIED**.

**SO ORDERED.**

> s/Nancy G. Edmunds
> Nancy G. Edmunds
> United States District Judge

Dated:  March 7, 2023


I hereby certify that a copy of the foregoing document was served upon counsel of record on March 7, 2023, by electronic and/or ordinary mail.

> s/Lisa Bartlett
> Case Manager

11